**Bobbie FISHER, Plaintiff,**

v.

**MARYLAND DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT, et al., Defendants.**

**No. Civ JFM–96–3460.**

United States District Court,
D. Maryland.

May 14, 1998.

---

Bobbie Fisher, Arlington, VA, pro se.

Hans Froelicher, IV, Crownsville, MD, George Levi Russell, III, Baltimore, MD, for Defendants.

## MEMORANDUM

MOTZ, Chief Judge.

Plaintiff Bobbie Fisher, a former employee of the Maryland Department of Housing and Community Development ("DHCD"), has brought this action against the DHCD and Raymond Skinner, Susan Gregson, Gregory Tavin, Rodney Wiesinger and Robert Goodman. The individual defendants are all employees with the DHCD. Fisher claims that during her employment with the DHCD she was subjected to sexual harassment, race discrimination, age discrimination, retaliatory termination, and discriminatory termination in violation of Title VII, the ADEA and the First and Fourteenth Amendments to the United States Constitution. She also asserts several common law tort claims. Defendants have moved for summary judgment. For the reasons that follow, I will grant summary judgment in favor of defendants as to Fisher's federal claims and dismiss her state law claims pursuant to 28 U.S.C. § 1367(c)(3).[1]

### I.

All of Fisher's claims in this suit arise from her relatively brief stint as an employee with the Maryland Department of Housing and Community Development's Office of Public Information ("OPI"). In May, 1995 Fisher signed a one-year contract to work for OPI as a writer, producing newsletters and press releases. Under the terms of the contract Fisher signed, her employment was scheduled to begin on May 17, 1995 and terminate on May 14, 1996. The record indicates that Raymond Skinner, then serving as deputy secretary of the DHCD, played a role in securing the position for Fisher. Skinner authorized the creation of the position ultimately filled by Fisher after discussions with Susan Gregson, the director of OPI, concerning the staffing needs of the Office. In addition, Skinner testified at deposition that he asked Gregson to consider Fisher for the position.

At OPI Fisher worked under the supervision of Gregson and office manager Gary Tavin. She was the only African American professional of the eight employees at OPI. Fisher alleges that from the very beginning of her time there, she was subjected to race discrimination and age discrimination at the

---

1. Fisher has filed a motion for appointment of counsel with her opposition to defendants' summary judgment motion. The record is sufficiently clear that I am satisfied that the interests of justice do not require that counsel be appointed to represent her. Accordingly, her motion will be denied.

hands of Gregson and Tavin. She also alleges that she was subjected to quid pro quo sexual harassment by Skinner. In late October, 1995 Fisher complained of her treatment to an officer with the DHCD's Equal Employment Opportunity ("EEO") office. Later, on December 14, 1995, Fisher filed a formal complaint with the Maryland Department of Human Relations and with the U.S. Department of Housing and Urban Development's ("HUD") Fair Housing Commission, which forwarded the complaint to the Equal Employment Opportunity Commission ("EEOC").

Later in December, Fisher was reassigned and began working under Bob Goodman, director of research with the DHCD. Fisher alleges that the reassignment was in reality a demotion, in retaliation for filing the complaints against the DHCD.

On February 23, 1996, the DHCD sponsored a symposium on race relations in conjunction with Black History Month. Fisher participated in the symposium, and spoke critically of what she perceived to be racism within the DHCD. She also distributed copies of a report published in 1994 by the Maryland General Assembly's Legislative Black Caucus, on racism in state government.

On February 24, 1996, Goodman and DHCD director of personnel Rodney Wiesinger informed Fisher that the DHCD had decided to terminate her employment. They gave her a letter, dated February 23, 1996 and signed by Skinner, which read in pertinent part: "[I]t is in the best interest of the Department to terminate its contract with you. · Your portion of the project that you have been working on is finished. We do not have any other work for you to do."

Fisher filed this lawsuit in November, 1996,[2] alleging sexual harassment, race discrimination, age discrimination, retaliatory termination, and discriminatory termination in violation of Title VII, the ADEA and the

First and Fourteenth Amendments to the United States Constitution. She also asserts several common law tort claims.

Defendants stand by the explanation for Fisher's termination offered in the February 23, 1996 letter. Skinner claims that from the outset Fisher's performance at the DHCD was poor, and that a few months into her tenure he had to meet with Susan Gregson—Fisher's initial supervisor—concerning her future. He testified at deposition that during the meeting, Gregson indicated that "she felt that Ms. Fisher's writing was not up to [Gregson's] standards ... that typically [Gregson] had to do a lot of editing, there was a lot of back and forth with Ms. Fisher about the substance of the writing as well as things like grammar." He described the ultimate decision to terminate Fisher as follows:

> As I've indicated before, there were discussions about terminating Ms. Fisher's contract going back to at least October, November. When the project she was working on for Mr. Goodman was completed, Mr. Goodman, I guess, and Ms. Gregson, even [state EEO officer] Mr. Hammond at that time had discussions about what should happen once the project was completed, I guess there were discussions about transferring her back to OPI, and ultimately the decision was that given the difficulties that she had previously in OPI in terms of working with Mr. Tavin and Ms. Gregson, that that was not the appropriate place for her, there was no more work for her to do in the Office of Research, so the recommendation was made to me by the group that I just mentioned, that the contract be terminated.

Defendants also have submitted affidavits from Goodman and Wiesinger. Goodman stated that Fisher completed the assignments he had given her prior to February 23, 1996, and that "as part of the discussion [with Skinner and Wiesinger concerning the

---

**2.** Fisher initially filed suit against the Maryland Department of Budget and Management and against Patricia J. Payne, Michael A. Glass, and Henry Cisneros. The individual defendants were then serving as secretary of the Maryland Department of Housing and Community Development, acting secretary of the Maryland Department of Budget and Management, and secretary of the U.S. Department of Housing and Urban Development, respectively. After this court dismissed the claims against those defendants, Fisher amended her complaint to include the claims discussed in this Memorandum.

termination of Fisher] I informed Mr. Skinner that I had no further work for Ms. Fisher to do in the Office of Research." Both Goodman and Wiesinger stated that at all times during Fisher's employment they were unaware that she had raised the allegations of sexual harassment and age and race discrimination contained in this lawsuit.

## II.

Fisher asserts claims for sexual harassment, race discrimination, retaliatory termination and discriminatory termination pursuant to both Title VII and 42 U.S.C. § 1983. A plaintiff may prove a claim of discriminatory treatment under Title VII by direct or indirect evidence or by utilizing the judicially created scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Though articulated in the Title VII context, the *McDonnell Douglas* framework is also applicable to claims alleging discriminatory treatment in employment under 42 U.S.C. § 1983. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 n. 1, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Abasiekong v. City of Shelby*, 744 F.2d 1055, 1058 (4th Cir.1984). Thus, separate analysis of the claims is not required.

Under the *McDonnell Douglas* scheme, the plaintiff must first establish by a preponderance of the evidence a prima facie case of discrimination. *See St. Mary's Honor Center*, 509 U.S. at 506, 113 S.Ct. 2742 (internal citations omitted). Establishment of the prima facie case creates a presumption that the employer unlawfully discriminated against the employee, and the burden shifts to the defendant to produce evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason. *See id.* at 506–507, 113 S.Ct. 2742 (internal citations omitted). If the defendant is successful in carrying this burden, the plaintiff must demonstrate by a preponderance of the evidence that defendant's reasons are pretextual, and that the real reason for defendant's actions is the discriminatory one alleged. *See id.* at 507–508, 113 S.Ct. 2742 (internal citations

omitted). Despite this scheme, the ultimate burden of persuasion remains at all times with the plaintiff. *See id.* at 507, 113 S.Ct. 2742. Fisher's claims asserted pursuant to Title VII and 42 U.S.C. § 1983 are examined below, in turn.

## A.

Fisher alleges that during her tenure with the DHCD she was subjected to quid pro quo sexual harassment by Skinner. Though the facts concerning the relationship between Fisher and Skinner are contested, the record is clear that by February, 1994 Fisher and Skinner had become well acquainted. At that time Skinner was serving as director of the Prince George's County Department of Housing and Community Development. That month, Fisher and Skinner met in a hotel room in New York city, where Skinner was traveling to attend a conference sponsored by HUD. During the visit the pair engaged in sexual relations.

Fisher claims that soon after she began working at the DHCD in May, 1995, Skinner promised her job security and upward mobility if she renewed their sexual relationship. She claims that she submitted to his demands until August, 1995. Later, in December, 1995 Skinner allegedly telephoned Fisher and visited her office, to implore her to renew once again their sexual relationship. Fisher alleges that during Skinner's visit to her office he groped her, and after she rebuffed his advances told her that her contract with the DHCD would not be renewed.

Skinner's version of events differs substantially. He maintains the meeting in New York city is the only time he engaged in sexual relations with Fisher, and that during Fisher's employment with the DHCD he rarely interacted with her and they had only a professional relationship. Nonetheless the record is clear—and Skinner does not deny—that he played a role in securing her a position as a writer with the DHCD.[3] *See supra* § I.

---

**3.** Skinner also admits that in September, 1994 he helped secure a position for Fisher as a writer with the Prince George's County Department of Housing and Community Development. And he admits to loaning her $500 on two separate occasions, in January, 1994 and March, 1995.

At the summary judgment stage, Fisher is entitled to have her evidence as forecast assumed, her version of matters in dispute accepted, and the benefit of all favorable inferences. *See Conkwright v. Westinghouse Electric Corp.*, 933 F.2d 231, 233 (4th Cir.1991). To establish a prima facie case of quid pro quo sexual harassment, a plaintiff must show that: (1) the employee belongs to a protected group; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the employee's reaction to the harassment affected tangible aspects of the employee's compensation, terms, conditions, or privileges of employment; and (5) the employer knew or should have known of the harassment and took no effective remedial action. *See Spencer v. General Electric Co.*, 894 F.2d 651, 658 (4th Cir.1990) (internal citations omitted). Assuming that Fisher has established a prima facie case of quid pro quo sexual harassment, I find that her claim nonetheless fails under the *McDonnell Douglas* paradigm, since she has failed to rebut the legitimate, nondiscriminatory reasons established by the DHCD for terminating her contract. *See, e.g., id.* at 659.

Defendants have offered testimony from Skinner and Goodman that Fisher was terminated after the assignment she had been working on for Goodman was completed. At that time, Goodman had no further assignments for Fisher, and the decision was made to terminate her contract rather than return her to a position working under Gregson and Tavin, with whom she had clashed in the past. That version of events is corroborated by additional testimony from Wiesinger. In response, Fisher offers no significant evidence that indicates the reasons given by the DHCD were a pretext or that Skinner's alleged sexual harassment played any role in the termination decision. The only evidence she offers consists of her own version of events with Skinner, uncorroborated by any additional evidence whatsoever. Such unsupported allegations fail to raise a genuine issue that the termination decision was discriminatory or pretextual, and are not by themselves sufficient to overcome a motion for summary judgment. *See Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985).

### B.

Fisher next alleges that during her time with the DHCD she was subjected to race discrimination by Gregson and Tavin. In particular, Fisher alleges she was subject to disparate treatment on account of her race as well as a racially hostile work environment. To support her claims, Fisher cites a laundry list of perceived injustices. For example, Fisher claims that from her first day with the DHCD Gregson warned her to seek alternative employment; that Gregson left notes at her desk pressuring her to look for other jobs; that Tavin allowed white employees to work independently or from home but denied her such liberties; that Tavin subjected her work product and attendance to undue criticism; that she was denied information, training and equipment afforded white employees; that she was deprived of certain job benefits enjoyed by white employees; and that Tavin made racially insensitive comments about African Americans.

Fisher's claims fail for several reasons. As a threshold matter, virtually all of Fisher's allegations are not substantiated by accounts of specific dates, times or circumstances. Such general allegations do not suffice to establish an actionable claim of race discrimination. *See Carter v. Ball*, 33 F.3d 450, 461–462 (4th Cir.1994) (internal citations omitted).

In addition, to prove disparate treatment a plaintiff must establish that an employer has treated certain people less favorably than others on the basis of race. *See International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Proof of discriminatory motive is critical, although in some cases it can be inferred from the mere fact of differences in treatment. *See id.* Likewise, a racially hostile working environment must be sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere. *See Carter*, 33 F.3d at 461. The existence of a hostile environment cannot be predicated upon acts that are isolated or genuinely trivial. *See id.*

The allegations raised by Fisher do not indicate discriminatory motive, nor do they constitute acts of racial harassment severe and pervasive enough to alter her working environment. At best, a few of the allegations—such as Fisher's claim that her work was subject to undue criticism—are inherently ambiguous and do not on their face reflect racially motivated discrimination. Other allegations are clearly not indicative of racial animus. For example, defendants have established that Fisher was not entitled to many of the benefits she claims she was denied on account of her race, due to her status as a contractual employee. Still more of the allegations appear to be nothing more than the fruits of Fisher's imagination. She claims, for instance, to have been pressured by Gregson and Tavin to seek alternative employment, allegedly for racially discriminatory reasons. But a review of the handwritten notes Fisher has submitted to support this claim reveals what appears to be nothing more than friendly advice from her supervisor Gregson, concerning opportunities for permanent employment with the state.

The only allegation potentially severe enough to support a claim for a racially hostile working environment are the racially insensitive comments allegedly made by Tavin. But, in addition to being wholly unsubstantiated, those allegations are too isolated in nature to serve as a predicate for a hostile environment claim. *See id.* Thus, Fisher's claim for race discrimination must fail.

### C.

 Fisher also alleges that she was terminated in retaliation for filing complaints with various state and federal agencies concerning the sexual harassment she was subjected to by Skinner. In order to establish a prima facie case of retaliatory termination, Fisher must prove (1) that she engaged in protected activity; (2) that the employer took adverse employment action against her; and (3) a causal connection existed between the protected activity and the adverse action. *Ross,* 759 F.2d at 365. While Fisher has made out a prima facie case, she has not offered evidence to rebut the legitimate, nondiscriminatory reasons established by the

DHCD for terminating her contract, so the claim must fail. *See Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir.1989).

It is undisputed that Fisher engaged in protected activity by filling the discrimination charges, and that she was terminated by the DHCD. But the only proof Fisher offers to support a finding of a causal connection between the protected activity and her discharge is the fact that she was fired after Skinner became aware that she had filed the charges. Skinner has admitted to questioning Fisher about the charges while she still worked for the DHCD. But "mere knowledge on the part of an employer that an employee it is about to fire has filed a discrimination charge is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons for discharging that employee." *Id.* Here, defendants have offered substantial evidence of legitimate reasons for discharging Fisher. Further, they have offered testimony from Wiesinger and Goodman indicating they were unaware of Fisher's charges of discrimination at the time of her discharge. In light of the paucity of evidence offered by Fisher of a causal connection between her filing of discrimination charges and her allegedly retaliatory termination, that claim must fail.

### D.

 In addition, Fisher alleges discriminatory termination, on the basis of race, sex and age. A prima facie case of discriminatory discharge consists of the following elements: (1) plaintiff is a member of a protected class; (2) plaintiff was qualified for the job and performed the job satisfactorily; (3) in spite of plaintiff's qualifications and performance, plaintiff was demoted and ultimately discharged; and (4) the position remained open to similarly qualified applicants after plaintiff's dismissal. *See Carter,* 33 F.3d at 458. Once again, even assuming that Fisher has made a prima facie case, she has not rebutted defendants' showing of legitimate, nondiscriminatory reasons for her dismissal. The evidence defendants have offered to support their explanation for Fisher's termination is substantial. It lies in contrast to the scant evidence of discrimination from

Fisher, which consists primarily of her own unsupported allegations. Such allegations, standing alone, are not sufficient to support a claim for discriminatory discharge.

## III.

■ Fisher brings a claim for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and 42 U.S.C. § 1983. The Fourth Circuit has held that the ADEA forecloses actions for age discrimination under § 1983. *See Zombro v. Baltimore City Police Dept.,* 868 F.2d 1364, 1366–71 (4th Cir.1989). Thus, Fisher's claim will be analyzed exclusively under the ADEA.

■ Under the scheme established by the ADEA, Fisher's claim for age discrimination is time-barred. Under § 626(e) of the ADEA, a plaintiff is required to bring an action "within 90 days after the date of the receipt of . . . notice" of right to sue from the EEOC. Courts have interpreted this provision as a statute of limitations, and held that failure to file suit within ninety days after receipt of a notice from the EEOC renders a plaintiff's action untimely. *See, e.g., Littell v. Aid Association for Lutherans,* 62 F.3d 257, 258 (8th Cir.1995). In this case, Fisher received a notice of her rights from the EEOC on or about April 22, 1996. She filed this action on or about November 4, 1996, well in excess of the ninety day limitations period.

## IV.

■ The last claim Fisher raises under 42 U.S.C. § 1983 alleges that she was terminated for exercising her First Amendment right to freedom of speech. Specifically, Fisher claims that she was terminated for speaking out on racism in state government at a symposium on race relations sponsored by the DHCD, and for distributing copies of a report on the subject prepared by the Maryland General Assembly's Legislative Black Caucus.

The Supreme Court has held that a government may not take adverse action against an employee for exercising her First Amendment rights, and has established a two-step test to determine whether the speech of a public employee is constitutionally protected. *See, e.g., Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Education of Township High School Dist.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). But application of the test and the protections of the First Amendment presupposes a causal connection between the contested speech and any adverse action taken against the employee. Here, Fisher fails to offer sufficient evidence of a causal connection between her comments on racism in state government and the decision of the DHCD to terminate her employment.

The only evidence that supports a causal connection is the timing of the termination, as well as testimony by Skinner that he found Fisher's comments "disloyal" and "inappropriate." While it is true that Fisher was informed of her termination on February 24, 1996—one day after making her comments on racism in state government—it is also true that Skinner testified that discussions about terminating Fisher's contract began as early as October, 1995. Further, Skinner's testimony indicates that the ultimate decision to terminate Fisher was made over several days in late February, 1996. He describes a series of discussions with Goodman, Gregson and Hammond concerning her status, and notes that the termination letter given to Fisher went through several drafts. Perhaps most important, the termination letter given to Fisher is dated February 23, 1996—the day before she was informed of her termination and the same day she made the comments at issue.

The Fourth Circuit has noted, albeit in a different context, that the fact that two events occur in temporal sequence is not sufficient to establish a causal connection between the events. *See Williams,* 871 F.2d at 457 (noting that the fact that employee was fired after she filed a discrimination charge "far from conclusively establishes the requisite causal connection" between the events to support a claim for retaliatory discharge). But in this case, Fisher relies primarily on the timing of her termination to support her claim that she was terminated for exercising her First Amendment rights. That claim seems unlikely, considered in

light of the factual background to her termination described above, as well as the fact that I have found substantial evidence of legitimate, nondiscriminatory reasons for the DHCD's decision to terminate Fisher. To survive summary judgment, plaintiff must produce evidence "showing that there is a genuine issue for trial ... genuineness means that the evidence must create fair doubt [and] wholly speculative assertions will not suffice." *Ross*, 759 F.2d at 364. Fisher has failed to produce such evidence here.

## V.

Lastly, Fisher states a claim for conspiracy under 42 U.S.C. § 1985, alleging that Skinner, Goodman and Wiesinger conspired to violate her constitutional rights. This claim also fails, since Fisher has not presented adequate proof of conspiracy to survive summary judgment. The Fourth Circuit has stressed that to state a claim for civil conspiracy, plaintiff must present specific allegations supported by concrete facts. *See, e.g., Hinkle v. City of Clarksburg*, 81 F.3d 416, 422–23 (4th Cir.1996); *Simmons v. Poe*, 47 F.3d 1370, 1376–77 (4th Cir.1995). In other words, plaintiff must offer "specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Hinkle*, 81 F.3d at 421 (internal citations omitted). Here, Fisher offers only speculation and conclusory accusations.

## VI.

In light of my ruling dismissing all of Fisher's federal claims, I will decline to exercise supplemental jurisdiction over Fisher's state law claims and will dismiss them. *See* 28 U.S.C. § 1367(c)(3).[4]

A separate order effecting the rulings made in this Memorandum is being entered herewith.

## ORDER

For the reasons stated in the Memorandum entered herewith, it is, this 14th day of May 1998

ORDERED

1. The motion for appointment of counsel filed by plaintiff Bobbie Fisher is denied;

2. The motion for summary judgment filed by defendants the Maryland Department of Housing and Community Development, Raymond Skinner, Susan Gregson, Gregory Tavin, Rodney Wiesinger and Robert Goodman is granted as to plaintiff Bobbie Fisher's federal claims;

3. Judgment is entered in favor of defendants against plaintiff as to plaintiff's federal claims; and

4. Plaintiff's remaining state law claims are dismissed pursuant to 28 U.S.C. § 1367(c)(3).

---

**4.** I note that the Maryland statute of limitations will not bar Fisher's remaining state law claims if she files suit in state court within thirty days of this dismissal. *See* Md.R.Proc. 2–101(b).