# United States Court of Appeals
## For the First Circuit

No. 07-1714

ALLISON FORREST,

Plaintiff, Appellant,

v.

BRINKER INTERNATIONAL PAYROLL COMPANY, LP,
D/B/A CHILI'S GRILL & BAR

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, Senior U.S. District Judge]

Before

Lynch, Circuit Judge,
Campbell and Stahl, Senior Circuit Judges.

Guy D. Loranger with whom Nichols, Webb & Loranger, PA, was on brief for appellant.
Louis B. Butterfield with whom Moss Shapiro was on brief for appellee.

December 19, 2007

**STAHL, <u>Senior Circuit Judge</u>**.  Plaintiff-appellant Allison Forrest appeals from a district court's order affirming a recommended decision by a magistrate judge granting summary judgment in favor of Brinker International Payroll Company LP D/B/A Chili's Grill & Bar ("Chili's").  Forrest's complaint alleged that Chili's, her former employer, exposed her to a hostile work environment created by the sexually harassing behavior of her co-worker and former paramour Mike Vashaw, in violation of Title VII of the Civil Rights Act of 1964 and the Maine Human Rights Act ("MHRA").  The magistrate judge's recommended decision found as a matter of law that Vashaw's actions did not constitute sexual harassment pursuant to Title VII because they were not "based upon her sex" and that in any case Chili's was not liable for Vashaw's behavior because it took prompt and appropriate action in response. The district court affirmed and adopted the magistrate judge's recommended decision.  We find sufficient evidence in the record to establish that Vashaw's harassment of Forrest was based upon her sex, but affirm the grant of summary judgment to Chili's on the grounds that its response was prompt and appropriate.

## I.  BACKGROUND

As befits an appeal from summary judgment, we review the facts in the light most favorable to Forrest, drawing all inferences in her favor.  <u>See</u> <u>Velazquez-Garcia</u> v. <u>Horizon Lines of P.R., Inc.</u>, 473 F.3d 11, 14 (1st Cir. 2007).

-2-

Forrest worked as a server and then a bartender at Chili's Bar and Restaurant in South Portland, Maine from July 2003 to May 2005. She began to date her co-worker Vashaw, who was employed as a line cook at the same restaurant, in October 2003. The couple dated "on and off" for about a year. In October 2004, after Forrest had broken off the relationship, she and Vashaw argued about money that Vashaw owed her. Forrest was then threatened by four women in the parking lot of the restaurant, who she claimed acted at Vashaw's instigation. Forrest reported the incident to the general manager of the restaurant the next day and following that report did not experience any similar incidents.

Forrest and Vashaw continued to see each other socially after the October 2004 incident and engaged in intimate relations as late as January 2005. In March of 2005 Forrest began dating another man, Jeremy Gregor. Vashaw, apparently upset by Forrest's new relationship, questioned Forrest frequently about Gregor, began to call her names such as "whore" and "bitch," and refused to give her things that she needed in the kitchen. In early March 2005, Forrest complained about Vashaw to the restaurant's general manager Claude Hadjaissa; however, she told Hadjaissa that she did not want Vashaw to be fired. Hadjaissa investigated the complaint and gave Vashaw an oral warning to "stop, and behave as a professional" or "circumstances will take place."

Forrest alleges that Vashaw's verbal abuse continued unabated throughout March 2005, and that she and other co-workers witnessed Vashaw calling her names such as "whore," "slut," "bitch," and "cunt." At the end of March 2005, Forrest complained to the kitchen manager Craig Twombly that she was upset with Vashaw's handling of her food orders, that he was calling her names, and that he was talking to other employees about her. On March 27, Twombly issued a final written warning to Vashaw, directing him to "stop all negative confrontations with other employees," instructing him that he must correct the problem "immediate[ly]; there will be no other warnings on this matter," and informing him that failure to comply would result in "immediate termination." Twombly and Hadjaissa informed Forrest that Vashaw had been given a written warning and asked her to let them know if his inappropriate behavior continued.

On April 13, 2005, Forrest reported to Hadjaissa that on the previous night Vashaw had squirted her with hot water while she was making a personal phone call, had acted rudely towards her, had cornered her in a walk-in cooler, called her a whore and other names, as well as telling her she was fat and needed to go to the gym. Hadjaissa terminated Vashaw after he admitted that he had told Forrest she was fat and needed to go to the gym, though he denied calling her a whore.

After Vashaw was terminated, Forrest obtained first a temporary and then a permanent restraining order against him. Forrest also initiated a meeting with the Chili's area director, Jonathan Witham.  Witham told Forrest that Vashaw would not be allowed on the premises when she was working, but that Chili's could not prevent him from entering the premises when she was not in the building.  Forrest resigned from her position on May 14, 2005.

The record also demonstrates that Chili's has an anti-sexual harassment policy, a copy of which was provided to Forrest when she began her employment there.  Among other things, the policy prohibits derogatory or sexual comments, making threats after a sexual advance is rejected, and certain types of inappropriate physical conduct.  The policy also lays out a complaint procedure, providing that management will begin an objective, thorough investigation upon receiving a complaint of harassment and that "[a]ny employee found to have violated the policy on discrimination and/or harassment will be subject to disciplinary action, which may include reprimand, suspension, or termination if warranted."

## II.  DISCUSSION

This court reviews a district court's grant of summary judgment de novo.  See Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 98 (1st Cir. 2002).  Summary judgment is appropriate where

the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."   42 U.S.C. § 2000e-2(a)(1).[1]   "A plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment."[2]  Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 66

---

[1] Maine courts apply the MHRA in accordance with federal anti-discrimination law.  See Morrison v. Carleton Woolen Mills, Inc., 108 F.3d 429, 436 n.3 (1st Cir. 1997).  Accordingly, the magistrate judge considered Forrest's MHRA claim and Title VII claim concurrently; we will do the same.

[2] Within the broad category of workplace sexual harassment prohibited by Title VII, there are various types of harassment claims, each generally treated by courts as analytically distinct from the others.  For example, there are quid pro quo harassment claims, there are hostile work environment claims, and there are retaliation claims.  See Valentin-Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006)(surveying different types of Title VII claims and laying out standard for each type); see also Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 751 (1998)(stating that "quid pro quo" and "hostile work environment" terminology is useful only in "making a rough demarcation between cases in which threats [to take tangible adverse employment action against the target of the harassment] are carried out and those where they are not or are absent altogether").  We note that the instant case does not involve a retaliation claim or a charge of quid pro quo harassment, and so analyze the present case through the lens appropriate for co-worker hostile work environment claims only.

(1986). To prove a claim of hostile work environment sexual harassment, a plaintiff must demonstrate:

> (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

Crowley v. L.L. Bean, Inc., 303 F.3d 387, 395 (1st Cir. 2002). This appeal focuses on the third and sixth prongs of the test; that is, whether the harassment was "based upon sex" and whether, even if so, Chili's may be held liable. We consider each point in turn.[3]

**1. Based Upon Sex**

The magistrate judge found that Forrest did not proffer sufficient evidence to allow a reasonable factfinder to conclude that Vashaw's inappropriate behavior towards Forrest was harassment

---

[3] Like the district court, we find it unnecessary to reach the parties' arguments on the other prongs, because Chili's is entitled to summary judgment on the basis of lack of employer liability alone. We therefore do not reach the question of whether the other elements of a hostile work environment claim--particularly whether the "the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment"--are satisfied in this case as a matter of law if grounds for employer liability had been established.

-7-

based on her sex, as required by Title VII, rather than on personal animosity stemming from their failed relationship.

In cases involving a prior failed relationship between an accused harasser and alleged victim, reasoning that the harassment could not have been motivated by the victim's sex because it was instead motivated by a romantic relationship gone sour establishes a false dichotomy. Presumably the prior relationship would never have occurred if the victim were not a member of the sex preferred by the harasser, and thus the victim's sex is inextricably linked to the harasser's decision to harass. To interpret sexual harassment perpetrated by a jilted lover in all cases not as gender discrimination, but rather as discrimination "'on the basis of the failed interpersonal relationship' ... is as flawed a proposition under Title VII as the corollary that 'ordinary' sexual harassment does not violate Title VII when the [ ] asserted purpose is the establishment of a 'new interpersonal relationship.'" Babcock v. Frank, 729 F. Supp. 279, 288 (S.D.N.Y. 1990)(internal citations omitted). Whether a harasser picks his or her targets because of a prior intimate relationship, desire for a future intimate relationship, or any other factor that draws the harasser's attention should not be the focus of the Title VII analysis. Instead, improper gender bias can be inferred from conduct; if the harassing conduct is gender-based, Title VII's requirement that the

harassment be "based upon sex" is satisfied.[4]  See Oakstone v. Postmaster General, 332 F. Supp. 2d 261, 271 (D. Me. 2004)(holding that there is a "difference for Title VII purposes between non-gender based and gender-based harassment;"); see also Perks v. Town of Huntington, 251 F. Supp. 2d 1143, 1157 (E.D.N.Y. 2003)(holding that employees are not barred from invoking the protection of Title VII merely because of a previous relationship with the harasser).

The magistrate judge conceded that "retribution after a failed romantic relationship" may rise to the level of Title VII harassment, but found that "[i]n this case, while the language Vashaw is alleged to have directed toward the plaintiff was certainly gender-specific ... [Forrest] does not proffer evidence of sexual advances by Vashaw, physical touching of a sexual nature or the type of activities found by the [Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183 (11th Cir. 2001)] court to have the potential to cross the line into Title VII harassment." A raft of case law, however, establishes that the use of sexually degrading, gender-specific epithets, such as "slut," "cunt," "whore," and "bitch," with which Vashaw barraged Forrest at work, has been consistently held to constitute harassment based upon sex. See, e.g., Winsor v. Hinckley Dodge, Inc., 79 F.3d 996, 1000-01

_____

[4] We do not reach the question, as it is not present in this case, of whether there are ways to establish harassment based upon sex in failed romance hostile work environment cases other than by evaluating the gender-specific nature of the harassing conduct.

(10th Cir. 1996) (finding it "beyond dispute" that plaintiff subjected to "vulgar and offensive epithets" such as "whore," "bitch" and "curb side cunt" could establish Title VII sexual harassment claim even though abuse may have been motivated by gender neutral reasons)(internal citations omitted); Burns v. McGregor Elec. Indus., 989 F.2d 959, 965 (8th Cir. 1993)(noting that "a female worker need not be propositioned, touched offensively, or harassed by sexual innuendo" in order for a sexual harassment claim to lie and holding that names such as "bitch," "slut," and "cunt" directed to female employee amount to harassment based on her sex); Andrews v. City of Philadelphia, 895 F.2d 1469, 1485 (3d Cir. 1990)("[T]he pervasive use of derogatory and insulting terms relating to women generally and addressed to female employees personally may serve as evidence of a hostile environment.").

There is no analytically defensible reason to draw a line in the sand in "failed relationship" cases between this type of sexually harassing conduct and sexual advances, physical touching, or any other conduct that has been held to be harassment based on sex pursuant to Title VII.[5] Nowhere does prior case law suggest

---

[5] Indeed in Oakstone, the conduct that led to the allegation of sexual harassment was not "sexual advances," "physical touching of a sexual nature," or the sort of particularly egregious sexually charged behavior that the magistrate judge in this case seemed to believe necessary in order for a failed relationship case to "cross the line into Title VII harassment." Rather, the accused harasser in Oakstone (a woman) filed a false allegation of physical abuse

that certain types of discriminatory behavior, held to constitute gender-based harassment in other cases, may not constitute gender-based harassment when the parties had previously engaged in a romantic relationship.[6]

Thus the record below establishes that a reasonable jury could conclude that Vashaw's behavior towards Forrest was based on her sex.

## 2. Employer Liability

The parties do not dispute that Vashaw was Forrest's co-worker, not her supervisor. "A plaintiff must satisfy different standards for establishing employer liability in a hostile work environment case depending on whether the harasser is a supervisor

---

against the plaintiff (a man) with a supervisor at their workplace. The Oakstone court refused to grant the employer's motion for summary judgment because it found sufficient evidence from which a jury could conclude that the harassment was gender-based, because the accused harasser made a charge against the plaintiff which "she knew would trigger an immediate and irreparable consequence for him, due to a stereotype about his gender." Oakstone, 332 F. Supp. 2d at 271-72.

[6] To support their position, Chili's in its appellate brief and the magistrate judge in his recommended decision rely on the Eleventh Circuit's Succar and Lipphardt cases. We have doubts as to the correctness of those cases, to the extent that Succar appears to affirm the fallacy that harassment could not be based upon sex because it was based upon acrimony resulting from a failed relationship and Lipphardt, although more in line with our reasoning here, does not reject that principle. See Succar v. Dade County Sch. Bd., 229 F.3d 1343, 1345 (11th Cir. 2000); Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183 (11th Cir. 2001). Even under the terms of those cases, however, accepted dubitante, the evidence in this case is sufficient to establish harassment based upon sex.

or co-employee of the victim." Crowley, 303 F.3d at 401. In this Circuit, in order to establish employer liability for a non-supervisory co-employee, "a plaintiff must demonstrate that the employer 'knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate action.'" Id. (quoting White v. N.H. Dept. of Corr., 221 F.3d 254, 261 (1st Cir. 2000)); see also Arrieta-Colon v. Wal-Mart P.R., Inc., 434 F.3d 75, 85-86 (1st Cir. 2006)(reiterating same standard for employer liability for non-supervisory co-worker hostile work environment claim brought under Americans With Disabilities Act); O'Rourke v. City of Providence, 235 F.3d 713, 736 (1st Cir. 2001)(if harasser is co-worker, employer is only liable if superior knew, or should have known, of harassment and failed to take prompt remedial action).[7] We find that Chili's remedial actions in this case satisfy the "prompt and appropriate" standard.[8]

---

[7] The Supreme Court has specifically reserved the question of what the correct standard is for determining employer liability for co-worker harassment. See Penn. State Police v. Suders, 542 U.S. 129, 143 n.6 (2004)("Ellerth and [Faragher v. City of Boca Raton, 524 U.S. 775 (1998)] expressed no view on the employer liability standard for co-worker harassment. Nor do we.").

[8] We therefore find it unnecessary to consider the applicability of the standard articulated by the Sixth Circuit in McCombs v. Meijer, which was cited in both the magistrate judge's recommended decision and Chili's brief on appeal. See McCombs v. Meijer, 395 F.3d 346, 353 (6th Cir. 2005)("[A]n employer who implements a remedy can be liable for sex discrimination in violation of Title VII only if that remedy exhibits such indifference as to indicate an attitude of permissiveness that

-12-

Drawing all factual inferences in favor of Forrest, it is evident that there is sufficient evidence in the record for a reasonable jury to conclude that Chili's knew or should have known of the harassment. Forrest complained about Vashaw's behavior to her managers on at least three occasions and specified that he was calling her names, including "whore." Furthermore, Vashaw spouted his verbal abuse openly in the kitchen, in front of Forrest and other employees; indeed, evidence submitted by Chili's establishes that the managers who investigated Forrest's complaints spoke with other employees who confirmed Vashaw's inappropriate behavior.

Liability attaches to Chili's, however, only if it failed to take "prompt and appropriate action" in response to Forrest's complaints. Forrest argues on appeal that the magistrate judge erred in determining that the remedial action taken by Chili's met this standard as a matter of law. Forrest asserts that the magistrate judge based this legal conclusion on erroneous fact-finding, creating a genuine issue of material fact as to the number of times Forrest or other employees complained to Chili's about Vashaw's harassing behavior. The following facts, however, are undisputed: 1) Chili's had adopted and implemented a policy

---

amounts to discrimination.")(internal citations omitted). We note that this appears to establish a higher bar to employer liability than the current standard in this Circuit. A reasonable jury could find that an employer response was not prompt and appropriate without being so indifferent as to indicate an attitude of permissiveness amounting to discrimination.

-13-

prohibiting sexual harassment and had trained its managers to take disciplinary action against offenders, "which may include reprimand, suspension, or termination if warranted"; 2) Vashaw's harassment of Forrest occurred over a period of four to six weeks from March to mid-April 2005; 3) Forrest initially told Chili's that she still cared about Vashaw and did not want him to be fired; 4) Chili's knew that Forrest and Vashaw had been embroiled in a tempestuous, on-again, off-again relationship; and 5) Chili's investigated Forrest's complaints and took remedial action against Vashaw three times, issuing an oral warning in mid-March, delivering a written warning in late March, and ultimately terminating Vashaw in mid-April.

Determining what constitutes a "prompt and appropriate" employer response to allegations of sexual harassment often requires the sort of case-specific, fact-intensive analysis best left to a jury. However, given the undisputed facts here, no reasonable jury could conclude that Chili's response was not prompt and appropriate. Whether Forrest complained to the restaurant managers only three times, as Chili's asserts, or a few more times, as Forrest asserts, Chili's response was reasonably prompt and appropriate considering the particular facts of this case. Faced with allegations of sexual harassment between ex-lovers known to have a volatile relationship, Chili's acted reasonably in addressing Forrest's complaints with progressive discipline of

-14-

Vashaw, giving Vashaw an opportunity to correct his behavior, and ultimately firing him when he did not do so, within a month of the first warning.

## III. CONCLUSION

For the foregoing reasons, we affirm the summary judgment order of the district court.

<u>Affirmed.</u>