STATE OF MAINE                                    SUPERIOR COURT
SAGADAHOC, SS                                     CIVIL ACTION
                                                  DOCKET NO. CV-16-02

KARY HALEY,                    )
          Plaintiff           )
                              )        ORDER ON
v.                            )        DEFENDANT'S MOTION
                              )        FOR SUMMARY JUDGMENT
THE AROOSTOOK                 )
MEDICAL CENTER                )
          Defendant,          )

This matter is before the Court on Defendant's Motion for Summary Judgment.

I. Background

The Plaintiff was employed by the Defendant, The Aroostook Medical Center ("TAMC"), beginning in December 2010, through February and March 2013. (Def.'s S.M.F. ¶¶ 1-6). During the same time period, Barry Campbell was also employed by TAMC and worked in the same office and space as the Plaintiff in late 2012 and early 2013. (Id. at ¶¶ 2-4). Mr. Campbell never had the authority to hire, fire, demote, transfer, or discipline any employees. (Id. at ¶ 5).

On Thursday, February 7, 2013, the Plaintiff observed Mr. Campbell pull a co-worker's ID badge that was attached to her chest in a manner that both the Plaintiff and her co-worker believed was inappropriate. (Id. at ¶ 13). Both Plaintiff and her co-worker reported the incident to the co-worker's supervisor that same day. (Id. at ¶ 14). During this meeting, the Plaintiff reported two incidents regarding Mr. Campbell's prior behavior towards herself: (1) that Mr. Campbell "stands too close to the back of her chair" and once asked "why is your

1

chair so low?" and (2) that "he was sitting on the side of her desk one day and she felt like he was brushing his genital area with his hand" in a way that was "more than an adjustment." (*Id.* at ¶ 17; Pl. Dep. Ex. 4). The supervisor reported these complaints, and those reported by the Plaintiff's co-worker, to human resources the same day. (Def.'s S.M.F. ¶¶ 19-21).

On either the next day, Friday, February 8, or the following Monday, February 11, 2013, the co-worker's supervisor and Mr. Campbell's supervisor met with Mr. Campbell to discuss the complaints, and inform him that there would be further investigation and that no retaliation would be tolerated. (*Id.* at ¶¶ 22-23). Whether Mr. Campbell took this warning seriously is a matter of dispute. (Pl.'s Opp. S.M.F. ¶ 23).

On Tuesday and Wednesday, February 12 and 13, 2013, the co-worker's supervisor interviewed three more of the Plaintiff's co-workers. (Def.'s S.M.F. ¶¶ 24-28). Each reported incidents of alleged sexually harassing behavior by Mr. Campbell. (*Id.* at ¶¶ 24, 26-28).

On Friday, February 15, 2013, Mr. Campbell was placed on administrative leave beginning Monday, February 18, 3013 for a comment he made that led TAMC to believe he was not taking the situation seriously. (*Id.* at ¶ 31).

The following week, Mr. Campbell's supervisor attempted to arrange a meeting with him to further investigate the February 7, 2013 reports by the Plaintiff and her co-worker. (*Id.* at 33). Mr. Campbell refused to meet without an attorney, but was told by TAMC that he could not have an attorney present, and therefore the meeting was never scheduled. (*Id.* at ¶¶ 34-36*)*.

On Thursday, February 28, 2013, Mr. Campbell met with TAMC's Senior Vice President of Human Resources, Thomas Umphrey. (*Id.* at ¶ 37). At this

2

meeting, Mr. Umphrey discussed the investigation, the circumstances surrounding Mr. Campbell's return to employment with TAMC, and his findings: (a) that Mr. Campbell engaged in unwelcome comments and physical acts, (b) that he made light of the situation and suggest retaliatory behavior, and (c) that he should have known that his actions were contrary to TAMC's policies. (*Id.* at ¶¶ 37-38; Umphrey Aff. Ex. 5). The next day, Friday, March 1, 2013, Mr. Umphrey and Mr. Campbell met again to review a letter describing Mr. Umphrey's findings, listed above, and issue a Final Written Warning that "any future behavior of a similar nature, including any retaliatory actions, will result in immediate termination." (Def.'s S.M.F. ¶¶ 41-43; Umphrey Aff. Ex. 5).

Also, on Friday, March 1, 2013, Mr. Umphrey, along with Mr. Campbell's supervisor and the Plaintiff's co-worker's supervisor, told the Plaintiff and her co-worker that Mr. Campbell would be returning to work on Monday, March 4, 2013. (*Id.* at ¶ 44). At this time, the Plaintiff claimed that she had not been fully heard, and was told that she could file a grievance concerning the handling of her complaint. (*Id.* at ¶ 47-48). The Plaintiff met with TAMC supervisors to discuss such a grievance on Monday, March 4, 2013, and she prepared a written statement in support of that grievance on March 5, 2013. (*Id.* at ¶¶ 51, 53). In this statement, the Plaintiff repeated the allegations of her original February 7, 2013 report in more detail and also described an additional incident in the fall of 2012 when Mr. Campbell put his arm around her and let his hand fall atop her breast. (*Id.* at ¶¶ 54-56).

When Mr. Campbell returned to work on Monday, March 4, 2013, the Plaintiff was out of the office on administrative leave for that week, and she was out on vacation the following week. (*Id.* at ¶¶ 49-50). During the week Plaintiff

3

was on administrative leave, Mr. Campbell went to the area where the Plaintiff's co-worker who also reported him was stationed. TAMC terminated Mr. Campbell on Friday, March 8, 2013 after Mr. Umphrey determined that Mr. Campbell could not follow the conditions placed on his employment. (*Id.* at ¶¶ 58-60). Between when the Plaintiff reported Mr. Campbell's conduct on February 7, 2013 and when he was terminated on March 8, 2013, the Plaintiff did not experience any further unwelcome sexual conduct from Mr. Campbell. (*Id.* at ¶ 64).

## II. Discussion

### A. Standard of Review

Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(a), (c); *Platz Assocs. v. Finley*, 2009 ME 55, ¶ 10, 973 A.2d 743 (internal citations omitted). A fact is material if "it has the potential to affect the outcome of the suit." *Id.* "A genuine issue of material fact exists when the fact finder must choose between competing versions of the truth." *Id.* When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.*

When the party moving for summary judgment bears the burden on a claim or defense, the moving party must establish the existence of each element of the claim or defense without dispute as to any material fact in the record in order to obtain summary judgment. *Cach, LLC v. Kulas*, 2011 ME 70, ¶ 8, 21 A.3d 1015. If the motion for summary judgment is properly supported, then the

4

burden shifts to the non-moving party to respond with specific facts indicating a genuine issue for trial in order to avoid summary judgment. M.R. Civ. P. 56(e).

B. Hostile Work Environment

To succeed on a claim of employment discrimination based on a hostile work environment, the plaintiff must demonstrate:

> (1) that she (or he) is a member of a protected class;
> (2) that she was subject to unwelcome sexual harassment;
> (3) that the harassment was based upon sex;
> (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment;
> (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and
> (6) that some basis for employer liability has been established.

*Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 22, 969 A.2d 897 (*citing Forrest v. Brinker Int'l Payroll Co.*, 511 F.3d 225, 228 n.1 (1st Cir. 2007)). TAMC contends that Factors 4 and 6 are not present here. (Def.'s Mot. Sum. J. 8). Since the Plaintiff must prove all six factors to be successful, TAMC's demonstration that at least one of the six factors are not present will be enough to defeat Plaintiff's claim. A discussion of Factor 6 follows, which is determinative of the case without regard to Factor 4.

TAMC argues that there is no basis for its liability as Mr. Campbell's employer. The Plaintiff believes that this issue cannot be determined at the summary judgment stage, and requires fact-finding to be done by a jury. (Pl.'s Resp. Def.'s Mot. 4). For this proposition, the Plaintiff cites to *Spicer v. Commonwealth of Virginia Dep't of Corrections.* 44 F.3d 218 (4th Cir. 1995). Reliance on this case is misplaced, as it was vacated after an en banc hearing. The Plaintiff also cites to *Watt v. UniFirst.* 2009 ME 47, 969 A.2d 897. In *Watt,* the court stated

5

that "the immediate and appropriate corrective action standard does not lend itself to any fixed requirements regarding the quality or quantity of the corrective responses required of an employer in any given case. . . . This evaluation '*often* requires the sort of case-specific, fact-intensive analysis best left to a jury.'" *Id.* at ¶ 28 (*citing Forrest v. Brinker Int'l Payroll Co., LP*, 511 F.3d 225, 232 (1st Cir. 2007)) (emphasis added). Although there are no fixed requirements as to what constitutes immediate and appropriate corrective action, this does not lead to the conclusion that there are no responses that are clearly appropriate and can be so determined at the summary judgment level. Further, the cited case, *Forrest*, only states that the determination of immediate and corrective action *often* requires a jury. The case continues in the next sentence to say "however, given the undisputed facts here, no reasonable jury could conclude that [the employer's] response was not prompt and appropriate," and affirms summary judgment to the employer on this point. 511 F.3d at 232. From this, it is evident that a determination of whether the employer took immediate and corrective action may appropriately be considered on summary judgment.

Upon deciding that this is an issue suitable for summary judgment review, the merits of this case may now be reached. Under the Maine Human Rights Commission ("MHRC") rules, employer liability is measured by two differing standards, based upon whether the alleged harasser is a supervisor of the victim. C.M.R. 94-348 ch. 3, §§ 10(2), 10(3). An employee is a supervisor for this purpose if he or she has the power to take "tangible employment actions" against the victim. *Vance v. Ball State Univ.* 133 S. Ct. 2434, 2439 (2013). An employee with no ability to hire, fire, demote, promote, transfer, or discipline another employee is not considered as supervisor. *Id.* Here, Mr. Campbell did

6

not have the authority to hire, fire, demote, transfer, or discipline any employees, including the Plaintiff, and therefore cannot be considered her supervisor.

In regards to sexual harassment between two co-workers, where neither supervises the other, the standard is as follows:

> An employer is responsible for acts of unlawful harassment in the workplace where the employer, or its agents or supervisory employees, knows or should have known of the conduct unless it can show that it took immediate and appropriate corrective action.

C.M.R. 94-348 ch. 3, § 10(3). In reviewing the MHRC's interpretation of this rule, the Law Court upheld the standard that employers are liable for co-worker sexual harassment under a hostile work environment claim when "the employer knew or should have known of the charged sexual harassment and failed to take immediate and appropriate corrective action."[1] *Watt*, 2009 ME 47, ¶ 27.

In *Watt*, an employee was subject to "an escalating pattern" of allegedly harassing behavior, while her co-worker harasser was given an oral warning, a verbal warning, a suspension, and ultimately terminated over the span of four months. *Id.* at ¶ 30. The court determined that a reasonable juror might conclude that this was insufficient corrective action by the employer. *Id.* Contrastingly, *Forrest* provides an example of prompt and appropriate action. 511 F.3d at 232. In *Forrest*, one employee was being sexually harassed by a co-

---

[1] *Watt* interprets an older version of the Code of Maine Rules. The relevant regulation in *Watt* stated:
> With respect to persons other than [agents and supervisors], an employer is responsible for acts of unlawful harassment in the workplace where the employer, or its agents or supervisory employees, knows or should have known of the conduct. An employer may rebut apparent liability for such acts by showing that it took immediate and appropriate corrective action.

2009 C.M.R. 94-348 ch. 3 § 3.06(I)(3). The structure of C.M.R. 94-348 ch. 3 was changed in the 2014 Code. However, it appears this was only a routine technical change, as opposed to a major substantive change. *Annual List of Rulemaking Activity*, Rules Adopted 1/1/2014 to 12/31/2014, Prepared by State of Maine Secretary of State, Rule Log #2014-227. Therefore, the conclusions of *Watt* are still relevant and applicable.

worker with whom she was previously in an intimate relationship. *Id.* at 227. While the employee continued to endure harassment, the employer investigated and disciplined the harasser three times: an oral warning after receiving the first report of his behavior in mid-March, a written warning in late March, and termination in mid-April. *Id* at 227, 232.

Here, there is no evidence in the record that TAMC or its managers had knowledge of Mr. Campbell's inappropriate behavior before February 7, 2013. The Plaintiff points to an incident in the fall of 2012, but it was not reported to TAMC until March 5, 2013, at which time, its investigation had already concluded, and Mr. Campbell had already been disciplined. Unlike in *Watts*, but similar to *Forrest*, only one month passed between when TAMC first learned of Mr. Campbell's conduct on February 7, 2013, and when he was terminated on March 8, 2013. TAMC spoke with Mr. Campbell either the next day or the day after, and then promptly began its investigation. TAMC placed Mr. Campbell on administrative leave when he did not take the situation seriously, attempted to meet with him over the span of two weeks to discuss the investigation and his employment, and issued him a Final Written Warning. When, upon his return to work, Mr. Campbell could not follow TAMC's conditions of his return, TAMC terminated him at the end of that week. That TAMC took similar steps to the employer in *Forrest* within a similar timeframe, issuing warnings and eventually terminating the alleged harasser within a month, leads to the conclusion that TAMC's actions here should be considered prompt and appropriate.

Lastly, it is relevant that the Plaintiff suffered no further sexual harassment from Mr. Campbell after her February 7, 2013 report. The Plaintiff cites *Spicer*, which has been vacated and is no longer good law. 44 F.3d 218.

8

However, the subsequent *Spicer* decision is relevant to this discussion. *Spicer v. Commonwealth of Virginia Dep't of Corrections*, 66 F.3d 705 (4th Cir. 1995). The court in the subsequent *Spicer* decision stated that in regards to effective remedial action, an employer need not take "the most effective response possible." *Id.* at 710. The court found clear error in the trial court's decision that the employer's response was inadequate, stating that the error is "especially true in light of [the victim's] concession that no further offensive remarks were made after the [employer] intervened." *Id.*

In *Forrest*, as discussed above, the employee had to tolerate continued harassment during the month that the employer took action against the harassing co-worker, and the First Circuit still affirmed the summary judgment determination that immediate and corrective action was taken. Here, the facts show that TAMC's actions were even more effective than the employer in *Forrest*, since the Plaintiff received no further sexual harassment from Mr. Campbell after her report. And although TAMC did not need to take the "most effective response possible," similar to in *Spicer*, it certainly made an effective response because the sexual harassment ceased after TAMC intervened.

In light of the promptness of TAMC's action in investigating the matter, meeting with Mr. Campbell, and terminating him for not following the conditions of his employment, and the undisputed fact that no further sexual harassment occurred after February 7, 2013 when TAMC first learned of Mr. Campbell's behavior, it is clear that TAMC provided immediate and appropriate corrective action. Since TAMC provided immediate and appropriate corrective action, it cannot be liable for Mr. Campbell's conduct, and therefore Factor 6 of the test for a hostile environment is not met.

9

III. Conclusion

ORDERED: Defendant's Motion for Summary Judgment is granted. Judgment is entered for the Defendant.

DATE: September 19, 2017

Daniel I. Billings
Justice, Maine Superior Court

10