2011 ME 120

## FEDERAL NATIONAL MORTGAGE ASSOCIATION

v.

## Nicolle M. BRADBURY et al.

Supreme Judicial Court of Maine.

Argued: Sept. 14, 2011.
Decided: Dec. 6, 2011.

Geoffrey S. Lewis, Esq., Hastings Law Office, P.A., Fryeburg, and Thomas A. Cox, Esq. (orally), Portland, for appellant Nicolle M. Bradbury.

John J. Aromando, Esq. (orally), and Catherine R. Connors, Esq., Pierce Atwood, LLP, Portland, on the briefs, for appellees Federal National Mortgage Association and GMAC Mortgage, LLC.

Panel: ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

Majority: ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

Dissent: LEVY, J.

GORMAN, J.

[¶ 1] Nicolle M. Bradbury appeals from a judgment of the District Court (Bridgton, *Powers, J.*) dismissing without prejudice the complaint for foreclosure initiated against her by the Federal National Mortgage Association (Fannie Mae). Bradbury challenges the court's failure to find loan servicer GMAC Mortgage, LLC in contempt pursuant to M.R. Civ. P. 56(g) after sanctioning Fannie Mae for submitting a bad faith affidavit for purposes of summary judgment. She also contends that the court erred in failing to award her attorney fees and costs associated with opposing Fannie Mae's motion for a protective order. We affirm the judgment.

## I. BACKGROUND

[¶ 2] In 2009, Fannie Mae instituted foreclosure proceedings against Bradbury for residential property she owns in Denmark, Maine. Fannie Mae named GMAC Mortgage, LLC, d/b/a Ditech, LLC.com, the loan servicer, as a party-in-interest.[1] Fannie Mae moved for a summary judg-

ment relying in part on an affidavit executed by Jeffrey Stephan, a "[l]imited [s]igning [o]fficer" for GMAC, which purported to establish the execution and recording of the mortgage and note, and the amount owed. The court granted a partial summary judgment determining that Fannie Mae established Bradbury's liability as a matter of law, but concluded that genuine issues of material fact remained as to the amount owed on the note for the damages portion of the claim.

[¶ 3] A few months later, the court granted Bradbury's request for a letter rogatory to depose Stephan pursuant to M.R. Civ. P. 28(b). During that deposition, Stephan testified that he does not read the affidavits he signs, reviews only the computations of amounts owed, does not review the exhibits to the affidavits, and does not execute the affidavits before a notary. Based on this testimony, the parties filed several motions, among them Fannie Mae's motion for a protective order to prevent the public disclosure of Stephan's deposition, *see* M.R. Civ. P. 26(c); Bradbury's request for an award of expenses incurred in opposing the protective motion, *see* M.R. Civ. P. 26(c), 37(a)(4); and Bradbury's motion seeking a finding that the Stephan affidavit was presented in bad faith, a finding that both Fannie Mae and counsel for Fannie Mae were in contempt for submitting the bad faith affidavit, and an award of attorney fees and costs, *see* M.R. Civ. P. 56(g).[2]

[¶ 4] The court denied Fannie Mae's motion for a protective order after determining that Fannie Mae failed to establish the requisite "good cause."[3] M.R. Civ. P.

---

1. Bank of America, another of Bradbury's creditors, was also named as a party-in-interest. Bank of America is not a party to this appeal.

2. We note that the motion presented to the trial court did not specifically request that the court find GMAC in contempt. Nonetheless,

a generous reading of its multiple paragraphs indicates that Bradbury wished to have GMAC sanctioned in some way.

3. "Upon motion by a party ... and for good cause shown, any justice or judge of the court in which the action is pending may make any order which justice requires to protect a party

26(c). The court also found that Stephan's affidavit was submitted in bad faith within the meaning of Rule 56(g), and ordered Fannie Mae to pay Bradbury for the attorney fees and costs she incurred in demonstrating the bad faith of Stephan's affidavit, i.e., the expenses associated with taking his deposition and with prosecuting the Rule 56(g) motion. Determining that its award of fees and costs was "a sufficient sanction" for Fannie Mae's bad faith conduct, the court "decline[d] to explore the issue of contempt in this case as requested by [Bradbury]."[4] After the submission of fees affidavits, the court ordered Fannie Mae to pay $23,779.36 of Bradbury's attorney fees and costs.

[¶ 5] On Fannie Mae's motion, the court then dismissed the complaint without prejudice. Bradbury appeals.

## II. DISCUSSION

[¶ 6] Maine Rule of Civil Procedure 56(g) authorizes the court to find that a summary judgment affidavit was submitted in bad faith, and sets forth the applicable sanctions:

> (g) **Affidavits Made in Bad Faith.** Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney fees, and any offending party or attorney may be adjudged guilty of contempt.

Although the court ordered Fannie Mae to pay her attorney fees and costs associated with its submission of the bad faith affidavit consistent with Rule 56(g), Bradbury argues that because the affidavit was executed by a GMAC employee, the court erred in declining to also find GMAC in contempt. In the context of the national "robo-signing" scandal, for which GMAC has already been sanctioned in other jurisdictions, and based on the "extreme and outrageous misconduct" GMAC perpetrated, Bradbury contends that the District Court erred in refusing to exercise its contempt power.

[¶ 7] The affidavit in this case is a disturbing example of a reprehensible practice. That such fraudulent evidentiary filings are being submitted to courts is both violative of the rules of court and ethically indefensible. The conduct through which this affidavit was created and submitted displays a serious and alarming lack of respect for the nation's judiciaries.

 [¶ 8] In the circumstances of this case, however, we do not disturb the sanctions fashioned by the court for the bad faith affidavit. Courts have rule-based, as well as inherent, power to hold parties in contempt, *see* M.R. Civ. P. 66; *Edwards v. Campbell,* 2008 ME 173, ¶ 8, 960 A.2d 324, but the decision of whether or not to do so rests in the considerable discretion of the trial court. *Cayer v. Town of Madawaska,* 2009 ME 122, ¶ 7, 984 A.2d 207; *see* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2742 (3d ed. 1998) ("Subdivision (g) makes it clear that the imposition of a contempt sanction is left to the court's discretion.").

---

or person from annoyance, embarrassment, oppression, or undue burden or expense...." M.R. Civ. P. 26(c).

4. In the same order, the court also considered and denied Fannie Mae's "Renewed Motion for Summary Judgment," and vacated its prior grant of a partial summary judgment.

[¶ 9] Even if we assume that the language of Rule 56(g) allows any party—and not just Fannie Mae as the party who submitted the affidavit to the court—to be held in contempt, we decline to hold that the court exceeded its discretion in declining to specifically find GMAC in contempt when it fashioned the sanction. The court ordered Fannie Mae to pay attorney fees and costs totaling more than $23,000. Although the court would have acted well within its discretion in granting a much more burdensome sanction at a much greater cost to Fannie Mae and/or GMAC, we conclude that the sanction it did impose was also within its discretion.

[¶ 10] Our decision is supported by substantial authority—or rather, the lack thereof—from other jurisdictions. To date, no published opinion shows that a court in Maine or any other state has imposed a contempt finding pursuant to Rule 56(g) for submitting a bad faith affidavit. Further, although M.R. Civ. P. 56(g)—in effect without amendment since 1959—largely duplicates the language of Fed.R.Civ.P. 56(h) [5]—in effect since 1937—no federal court has ever issued a finding of contempt on this basis. *See* M.R. Civ. P. 56 Reporter's Notes to 1959 promulgation. Indeed, only in "rare instances" are *any* Rule 56(g) sanctions imposed. *Fort Hill Builders, Inc. v. Nat'l Grange Mut. Ins. Co.*, 866 F.2d 11, 16 (1st Cir. 1989); *see* Fed.R.Civ.P. 56 advisory committee's note to 2010 amend. (discussing rule amendments that "reflect[ ] the experience that courts seldom invoke the independent Rule 56 authority to impose sanctions"). In short, no court in the nation—state or federal—has ever issued a finding of contempt and additional resulting sanctions pursuant to the state or federal version of Rule 56(g). 10B Charles Alan Wright, Arthur R. Miller & Mary Kay

Kane, Federal Practice and Procedure § 2742 (3d ed. 1998) ("To date, this penalty does not appear to have been applied in any reported case."). Against this backdrop of precedent, and given our highly deferential standard of review, we cannot say that the trial court abused its discretion in declining to be the first court in the nation to employ Rule 56(g) contempt sanctions.

■ [¶ 11] We also discern no error or abuse of discretion in the court's failure to award Bradbury attorney fees and costs in defending against the motion for a protective order pursuant to M.R. Civ. P. 37(a)(4). *See* M.R. Civ. P. 26(c) (applying the fees and costs provision of Rule 37(a)(4) to unsuccessful motions for protective orders). Contrary to Bradbury's contention, the court's determination that Fannie Mae did not establish the "good cause" necessary to obtain a protective order pursuant to Rule 26(c) does not preclude its authority to also find that the motion was "substantially justified or that other circumstances make an award of expenses unjust" pursuant to Rule 37(a)(4). *See* M.R. Civ. P. 52(b); *Brown v. Habrle*, 2008 ME 17, ¶ 10, 940 A.2d 1091 (stating that in the absence of a motion for findings of fact or conclusions of law, we must assume that the fact-finder made all findings necessary to support its judgment); *see also Battryn v. Indian Oil Co.*, 472 A.2d 937, 940 (Me.1984); 2 Harvey, *Maine Civil Practice* § 37:2 at 735 (3d ed. 2011).

The entry is:

Judgment affirmed.

LEVY, J., dissenting.

[¶ 12] I respectfully dissent.

[¶ 13] The District Court did not simply conclude that Fannie Mae and GMAC

---

**5.** The bad faith affidavit provision was initially promulgated as Fed.R.Civ.P. 56(g). Fed.

R.Civ.P. 56 advisory committee's note to 2010 amend.

should not be found in contempt; rather, as the court explained, it "decline[d] to explore the issue of contempt in this case as requested by [Bradbury]." Because the circumstances known to the court called into question the very integrity of the summary judgment process as it relates to this and possibly numerous similar cases, I conclude that the court should have conducted a hearing before it determined that a finding of contempt was not warranted.

[¶ 14] The bad faith extant in this case was, as the court found, "serious and troubling" misconduct. GMAC's loan servicer, Jeffrey Stephan, testified at his deposition that he signed about 8,000 documents each month. He testified that he did not read affidavits before he signed them; he did not have custody or personal knowledge of loan files or documents, even though his affidavit said he did; and he did not know whether the documents attached to his affidavit were true and correct copies, even though his affidavit said that they were. Stephan did not know whether the documents referred to in his affidavit in this case were attached to the affidavit when he signed it. He further testified that after he signed affidavits, they were taken to another location by another employee to be notarized by a notary who certified that Stephan personally appeared and swore to the truth of the affidavits, even though Stephan did not.[6] In addition, GMAC was previously sanctioned by a Florida court for engaging in the very same practices. *See TCIF REO2, LLC v. Leibowitz*, No. 16–2004–CA–4835–XXXX–MA (Fla.Cir.Ct. May 1, 2006) (unpublished order).

[¶ 15] Maine Rule of Civil Procedure 56(g) directs that if a court determines that a party's summary judgment affidavit was "presented in bad faith," it "shall forthwith" award reasonable expenses, including attorney fees, to the other party. This is what occurred here. The rule further provides that "any offending party or attorney may be adjudged guilty of contempt." M.R. Civ. P. 56(g). The precise question presented is whether the court may exercise this discretion regarding contempt without conducting a hearing. The answer should account for the seriousness of the bad faith committed before the court and the extent to which it undermines the administration of justice.

[¶ 16] In this case, the dishonesty associated with the preparation and notarization of Stephan's affidavit was severe. Not only did the affidavit fail to present admissible evidence, as the rule requires, but it deceived a judge into believing that it did. Furthermore, we can take judicial notice that GMAC is one of the largest mortgage loan servicers in the United States.[7] Accordingly, if contempt was found in this case, the court would need to consider whether the resulting sanctions should be sufficient to deter similar mis-

---

6. Contrary to GMAC's arguments in response to the motion in District Court, the defects with Stephan's affidavit were not merely "procedural." Although the affidavit stated that true and accurate copies of the note and mortgage were attached to it, the affidavit failed to attach a loan modification agreement that amended both the note and mortgage. The affidavit also asserted that a true and correct copy of the mortgage assignment from GMAC to Fannie Mae, dated September 17, 2007, was attached. If this is true, the October 16, 2007 loan modification agreement entered into by GMAC as the mortgagee was ineffective because Fannie Mae, and not GMAC, would have been the mortgagee as of that date.

7. *See Robo–Signing, Chain of Title, Loss Mitigation, and Other Issues in Mortgage Servicing: Hearing Before the Subcomm. on Hous. & Cmty. Opportunity of the H. Comm. on Fin. Servs.*, 111th Cong. 307 (2011) (statement of Thomas Marano, Chief Executive Officer, Mortgage Operations, Ally Financial Inc.) *available at* http://financialservices.house.gov/Media/file/hearings/111/Marano111810.pdf.

conduct in future cases. Because Stephan admitted that he signed thousands of such affidavits and related documents each month and GMAC was previously sanctioned for similar conduct, there was good cause to believe that such misconduct was not limited to this case and that the management of GMAC and Fannie Mae, and their attorneys, knew or should have known of the wrongful manner in which the affidavit presented in this case was produced.[8]

[¶ 17] The medium of the mortgage foreclosure summary judgment process is the paper submissions authorized by Rule 56—affidavits, statements of material facts, motions, and memoranda of law. Unlike live testimony, which is subject to the fact-finder's scrutiny of its credibility, the veracity of a paper submission is not easily determined. An affiant who is careless or is willing to fabricate facts encounters few barriers to the production of an affidavit that, within its four corners, appears to be well-conceived and trustworthy. Consequently, the integrity of the process depends largely on the good faith of the financial institutions and attorneys who invoke the rule. As we recognized in *HSBC v. Murphy,* the obligation of good faith is made real by the signature requirements of M.R. Civ. P. 11, which is the primary sentry guarding against the corruption of the summary judgment process, and the other requirements of the civil rules. *See HSBC Mortg. Servs., Inc. v. Murphy,* 2011 ME 59, ¶ 15 n. 8, 19 A.3d 815. Rule 11 is nothing more than a dead letter, however, if there is no serious con-sideration of additional consequences, beyond an award of expenses and fees, for a flagrant violation of the summary judgment rule.

[¶ 18] Faced with extreme misconduct which misled the court and thereby undermined the integrity of the judicial process, the court should have granted Bradbury's request that it undertake a more searching inquiry before it determined whether a finding of contempt was warranted.

---

8. Indeed, several other jurisdictions have grappled with similar misconduct on the part of Jeffrey Stephan and GMAC. *See Sheenan v. Mortg. Elec. Registration Sys., Inc.,* 2011 WL 3501883, at *2, 2011 U.S. Dist. LEXIS 88514, at *4 (D.N.J. Aug. 10, 2011); *Ohio ex rel. DeWine v. GMAC Mortg., LLC,* 2011 WL 1884543, at *1, *2, 2011 U.S. Dist. LEXIS 53449, at *2, *5 (N.D.Ohio May 18, 2011); *Huber v. GMAC, LLC,* 2011 WL 1466278, at *2–3, 2011 U.S. Dist. LEXIS 44148, at *5–7 (M.D.Fla. Apr. 18, 2011); *U.S. Bank v. Coley,* 2011 WL 2734603, at *2, 2011 Conn.Super. LEXIS 1508, at *5 (Conn.Super.Ct. June 10, 2011); *In re Simpson,* 711 S.E.2d 165, 173–74 (N.C.Ct.App.2011); *U.S. Bank Nat'l Ass'n v. Kimball,* 2011 VT 81, ¶¶ 4, 6–7, 9, 27 A.3d 1087.