MAINE SUPREME JUDICIAL COURT                           Reporter of Decisions
Decision:     2013 ME 33
Docket:       Yor-12-213
Argued:       December 12, 2012
Decided:      March 21, 2013

Panel:        SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.
Majority:     SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.
Concurring:   SILVER, and JABAR, JJ.

## CLAIRE TROTT

v.

## H.D. GOODALL HOSPITAL

LEVY, J.

[¶1]   Claire Trott appeals from the Superior Court's (York County, *Fritzsche, J.*) grant of a summary judgment in favor of her former employer, H.D. Goodall Hospital, on Trott's claim that the Hospital violated section 833(1)(C) of Maine's Whistleblowers' Protection Act (WPA), 26 M.R.S. §§ 831-840 (2012), when it discharged her for participating in a deposition in connection with a wrongful death lawsuit against the Hospital.   The Hospital contends that it discharged Trott based on misconduct to which she admitted during the deposition, not her participation in the deposition.   Because we conclude that Trott presented sufficient evidence to create a genuine issue of material fact, we vacate the judgment.

## I. BACKGROUND

[¶2]  The following facts are supported by the summary judgment record and presented in the light most favorable to Trott, as the nonprevailing party.  *See Daniels v. Narraguagus Bay Health Care Facility*, 2012 ME 80, ¶ 2, 45 A.3d 722.

[¶3]  The Hospital employed Trott as a nurse for approximately nineteen years.  Between 1998 and 2007, the Hospital's performance evaluations of Trott were consistently positive.

[¶4]  In December 2007, a patient died during Trott's shift.[1]  After the patient's death, Trott spoke with the deceased patient's daughter and speculated as to possible causes of death, including morphine overdose.  The patient's estate initiated a wrongful death lawsuit against the Hospital.

[¶5]  The following October, the Hospital gave Trott her annual performance evaluation, which awarded Trott a 1.5 percent raise and advised her that she needed improvement in the areas of documentation and medication administration. In January 2009, the Hospital reevaluated Trott and awarded her an additional 1.5 percent raise for satisfactory improvement in those areas.

[¶6]  A month after Trott's positive reevaluation, she was deposed in connection with the wrongful death lawsuit against the Hospital.  During Trott's

---

[1]  Nothing in the summary judgment record suggests that Trott was responsible for the patient's death.

preparation for the deposition, the Hospital's attorney told Trott that she was to blame for the lawsuit because she had indicated to the patient's daughter that the Hospital might be responsible for the patient's death due to a morphine overdose.

[¶7]  During the deposition, the attorney for the deceased patient's estate asked Trott about her care of the patient in the hours leading up to the patient's death.  Trott testified that during her rounds, she had observed the patient "sound asleep," and that she had intended to enter that information in the patient's computerized medical record.  Following this testimony, the attorney presented Trott with a copy of the patient's medical record, which showed that Trott had entered in the record that the patient was "alert, oriented times three" and had an "unsteady gait."

[¶8]  The attorney asked Trott to explain the discrepancy between her observation of the patient and the medical record entry.  This was the first time Trott had been shown the discrepancy.  Trott responded, "see, this electronic thing is new to me, so, in my opinion, I was—I know [the patient] and I know he is alerted and oriented normally, and I was going—I was doing the assessment according to that, not—I don't know what you're—I don't know how to explain it."  When pressed as to how she could have known that the patient was alert and had an unsteady gait when the patient was, in fact, sleeping, Trott explained that she made the medical record entry based on her earlier observations of the patient

4

while the two attended church. Trott now contends that she offered the church explanation at the 2009 deposition because she did not know how else to explain the discrepancy, and that the real reason for the improper medical record entry may have been that she accidentally entered the wrong information into the system.

[¶9] Some Hospital administrators told Trott that they knew she had not done it on purpose, meaning that she did not do it deliberately. Nevertheless, on March 26, 2009, a day after Trott signed her deposition transcript, the Hospital sent Trott a letter formally terminating her employment on the ground that the medical record entry Trott described in her deposition constituted a "[f]alsification of a patient medical record," which is a terminable offense within the meaning of the Hospital's Conduct and Discipline policy.[2] As required by law, the Hospital reported the discharge to the Maine State Board of Nursing. The Hospital's letter to the Board cited additional bases for its decision to discharge Trott, including her alleged incompetence with regard to documentation and medication administration.

[¶10] Trott filed a complaint against the Hospital, alleging that it violated 26 M.R.S. § 833(1)(C) because it discharged her in retaliation for her deposition testimony in the wrongful death lawsuit against the Hospital. The Hospital moved for summary judgment based on its contention that it discharged Trott because she

---

[2] The policy itself does not define what constitutes falsification of a record.

falsified a patient's medical record. The court granted summary judgment because it concluded that Trott did not meet her burden to produce evidence that the Hospital discharged her because of her participation in the deposition. This appeal followed.

## II. DISCUSSION

[¶11] When an employer discriminates against an employee for being requested to participate in a court action, the Maine Human Rights Act provides the employee with a cause of action against the employer.[3] *See* 5 M.R.S. §§ 4572(1)(A), 4621 (2012); 26 M.R.S. § 833(1)(C).[4] To prevail on this claim, an employee must prove three elements: (1) the employee was requested to participate in a court action, (2) the employer subjected the employee to an adverse employment action, and (3) there was a "causal link" between being requested to participate in a court action and the adverse employment action. *See* 26 M.R.S. § 833(1)(C); *Costain v. Sunbury Primary Care, P.A.*, 2008 ME 142, ¶ 6, 954 A.2d 1051. Thus, we will affirm the grant of summary judgment against Trott only if

---

[3] Although Trott framed her complaint as a cause of action pursuant to the Whistleblowers' Protection Act, 26 M.R.S. §§ 831-840 (2012), the WPA does not provide whistleblowers with a direct cause of action; rather, the WPA creates liability that is actionable pursuant to the Maine Human Rights Act. *See* 5 M.R.S. §§ 4572(1)(A), 4621 (2012); *see also Fuhrmann v. Staples the Office Superstore E., Inc.*, 2012 ME 135, ¶ 14, 58 A.3d 1083.

[4] Title 5 M.R.S. § 4621 (2012) has been amended since this action began; however, the amendment is not relevant to this appeal. *See* P.L. 2011, ch. 613, § 22.

6

she failed to meet her burden of production on any of these three elements.[5] Because the Hospital properly concedes that Trott's discharge is an adverse employment action, we focus on whether Trott met her burden to produce evidence that (A) she was requested to participate in a court action, and (B) a causal link exists between Trott's participation in the court action and her discharge.

A.     Trott's Participation in a Court Action

[¶12]    Section 833(1)(C) prohibits an employer from discharging an employee because "[t]he employee is requested to participate in . . . a court action."  26 M.R.S. § 833(1)(C).  A deposition is a "court action" within the meaning of the WPA because depositions are an integral part of the litigation process and are subject to Maine's Court Rules.  *See* M.R. Civ. P. 32; *see also Henry v. City of Detroit*, 594 N.W.2d 107, 110-12 (Mich. Ct. App. 1999) (construing "court action" in a nearly identical provision of the Michigan WPA to include depositions).

[¶13]    The unambiguous language of section 833(1)(C) protects the employee from discrimination based on the employee's requested *participation* in a deposition.  It does not prevent an employer from taking an adverse employment

---

[5] "We review the grant of a summary judgment de novo." *Levesque v. Androscoggin Cnty.*, 2012 ME 114, ¶ 5, 56 A.3d 1227.  We will affirm the grant of summary judgment against a plaintiff who "presents insufficient evidence on an essential element in her cause of action, such that the defendant would be entitled to judgment as a matter of law on that state of the evidence at a trial." *Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 9, 824 A.2d 48 (quotation marks and alteration omitted).

action against an employee based on the *content* of the employee's deposition testimony. Section 833(1)(C) need not protect employees from discrimination based on deposition testimony that "blows the whistle" on an employer's illegal or unsafe practices, because other subsections of section 833(1) serve that function. *See* 26 M.R.S. § 833(1)(A), (B), (E).[6] Furthermore, by not protecting deposition content, section 833(1)(C) prevents employees from immunizing themselves against an employer's response to the employee's unacceptable behavior by simply testifying to that behavior during the course of a deposition. Thus, the limited

---

[6] These subsections provide:

> **1. Discrimination prohibited.** No employer may discharge, threaten or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because:
>
>> **A.** The employee, acting in good faith, or a person acting on behalf of the employee, reports orally or in writing to the employer or a public body what the employee has reasonable cause to believe is a violation of a law or rule adopted under the laws of this State, a political subdivision of this State or the United States;
>>
>> **B.** The employee, acting in good faith, or a person acting on behalf of the employee, reports to the employer or a public body, orally or in writing, what the employee has reasonable cause to believe is a condition or practice that would put at risk the health or safety of that employee or any other individual. . . .
>>
>> . . . .
>>
>> **E.** The employee, acting in good faith and consistent with state and federal privacy laws, reports to the employer, to the patient involved or to the appropriate licensing, regulating or credentialing authority, orally or in writing, what the employee has reasonable cause to believe is an act or omission that constitutes a deviation from the applicable standard of care for a patient by an employer charged with the care of that patient. . . .

26 M.R.S. § 833(1)(A), (B), (E) (2012).

8

applicability of section 833(1)(C) allows section 833(1) as a whole to prevent unlawful whistleblower retaliation by an employer while also preserving an employer's right to discharge an employee at will.

[¶14] Therefore, to the extent that the content of Trott's testimony alerted the Hospital to lawful grounds for Trott's discharge, section 833(1)(C) did not make it unlawful for the Hospital to discharge Trott on those grounds.[7] However, to the extent that the Hospital discharged Trott because of her participation in the deposition, the discharge is unlawful pursuant to section 833(1)(C). We thus turn to the question of whether Trott presented sufficient evidence to withstand summary judgment on the issue of whether there was a causal link between her participation in the deposition and her discharge. *See Costain*, 2008 ME 142, ¶ 6, 954 A.2d 1051; *Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 9, 824 A.2d 48.

B.      Trott's Burden to Produce Evidence of a Causal Link between Her Participation in the Deposition and Her Discharge

[¶15] We review the grant of summary judgment on the issue of causation in an employment discrimination claim by applying the three-step, burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *See Fuhrmann v. Staples the Office Superstore E., Inc.*, 2012 ME 135, ¶ 13, 58 A.3d 1083; *Doyle*, 2003 ME 61, ¶ 14, 824 A.2d 48. Under that

---

[7] Because Trott contends only that the Hospital violated 26 M.R.S. § 833(1)(C) (2012), we need not reach the issue of whether any other section of the WPA would make it unlawful for the Hospital to discharge Trott in these circumstances.

framework, (1) the employee bears the initial burden to produce evidence that unlawful discrimination motivated the employer's adverse employment action against the employee; (2) if the employee meets that burden, the burden shifts to the employer to produce evidence of a legitimate, lawful reason for the adverse employment action; and (3) if the employer meets that burden, the burden shifts back to the employee to produce evidence that the employer's proffered reason is a pretext to conceal an unlawful reason for the adverse employment action. *See Fuhrmann*, 2012 ME 135, ¶ 13, 58 A.3d 1083.

1.　Trott's Initial Burden to Produce Evidence that the Hospital Discharged Her because She Participated in the Deposition

[¶16]　An employee can meet her burden of production at the first step of the *McDonnell* analysis by producing evidence of a close temporal nexus between protected activity and an adverse employment action. *See Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 33, 969 A.2d 897.　Here, because Trott produced evidence that the Hospital discharged her forty-one days after she participated in the deposition, and one day after she signed her deposition transcript, she met her initial burden to produce evidence that the Hospital discriminated against her because she engaged in protected activity. *See id.*　Therefore, the burden shifted to the Hospital to produce competent evidence of a legitimate, nondiscriminatory reason for discharging Trott. *See Fuhrmann*, 2012 ME 135, ¶ 13, 58 A.3d 1083.

2. The Hospital's Burden to Produce Evidence of a Legitimate, Lawful Reason for Discharging Trott

[¶17] The Hospital produced evidence that at the time of Trott's discharge, it believed that she had made an entry in a patient's medical record based on noncontemporaneous observations of the patient. It also produced evidence that making such an entry in a patient's medical record was a falsification of records, which constituted a terminable offense. Thus, the Hospital met its burden to produce evidence of a legitimate reason for discharging Trott, and the burden of production shifted back to Trott to present evidence that the Hospital's stated reason for her discharge—the falsification of records—was a pretext to conceal the fact that it discharged her because of her participation in the wrongful death lawsuit deposition. *See id.*

3. Trott's Burden to Produce Evidence that the Hospital's Articulated Reason for Her Discharge Was Pretext

[¶18] To meet the burden of production on the issue of pretext, an employee must present sufficient evidence to raise a genuine issue of fact regarding the employer's motivation for the adverse employment action against the employee. *See id.* "A genuine issue of fact exists when the evidence requires a fact-finder to choose between competing versions of the truth." *State v. Thompson*, 2008 ME 166, ¶ 7, 958 A.2d 887 (quotation marks omitted). Thus, a court should only grant summary judgment if it concludes that no reasonable fact-finder could find pretext

on the summary judgment record. *See Cookson v. Brewer Sch. Dep't*, 2009 ME 57, ¶ 16, 974 A.2d 276; *see also Arrow Fastener Co. v. Wrabacon, Inc.*, 2007 ME 34, ¶¶ 16-17, 917 A.2d 123.

[¶19]   In making this assessment, judges must remain mindful that it is a failure of proof, and not the weight that might be assigned to the proof, that determines whether summary judgment is appropriate. *See Arrow Fastener Co.*, 2007 ME 34, ¶ 17, 917 A.2d 123.  This takes on a special importance in the context of employment discrimination cases, in which "direct evidence of discriminatory animus will rarely be available," *Cookson*, 2009 ME 57, ¶ 21, 974 A.2d 276, and an employee's case often relies on credibility determinations and circumstantial evidence, *Stanley v. Hancock Cnty. Comm'rs*, 2004 ME 157, ¶ 36, 864 A.2d 169 (Alexander, J., dissenting).  Credibility determinations are rarely, if at all, possible at the summary judgment stage, where the undisputed facts are gleaned from paper submissions and not from the testimony of live witnesses. *See Fed. Nat'l Mortg. Ass'n v. Bradbury*, 2011 ME 120, ¶ 17, 32 A.3d 1014 (Levy, J., dissenting).  In addition, circumstantial evidence, by its nature, often gives rise to competing inferences. *See Daniels*, 2012 ME 80, ¶ 37, 45 A.3d 722 (Silver, J., concurring).

[¶20]   Accordingly, when judges evaluate a summary judgment record, they should be mindful that what might initially appear to be a weak case of pretext is not the same as no case.  Proof produced by the employee should be evaluated with

12

an awareness that reasonable jurors can and often do disagree as to both the weight and meaning of evidence.  *See* Dan M. Kahan et al., *Whose Eyes Are You Going to Believe?*  Scott v. Harris *and the Perils of Cognitive Illiberalism*, 122 Harv. L. Rev. 837, 898 (2009).

[¶21]  With these principles in mind, our review of the summary judgment record in this case reveals three ways in which a reasonable juror might find that the Hospital's stated reason for discharging Trott was pretext.

[¶22]  First, Trott produced evidence that she was blindsided by the medical record that was shown to her for the first time during her deposition and that she struggled to explain the discrepancy between the records and her recollection. From this evidence, a juror might reasonably conclude that Trott's 2009 deposition demonstrated nothing more than that she was a flustered deponent struggling to respond to surprise evidence suggesting that she had made a mistake in the care of a patient who died under her care.  This could lead the juror to further conclude that Trott's contradictory deposition testimony provided a weak basis for the Hospital's stated belief that Trott had falsified a medical record, a conclusion that assists Trott in meeting her burden of production on the issue of pretext.  *See Cookson*, 2009 ME 57, ¶ 17, 974 A.2d 276.

[¶23]  Second, Trott produced evidence that some Hospital administrators may have believed that Trott did not make the improper entry "on purpose."  From

this evidence, a reasonable juror could conclude that the Hospital believed that Trott had made some kind of negligent error, which would contradict its contention that it discharged Trott for falsifying a record, a charge that suggests an intentional act. This evidence of the Hospital's contradictory reasons for its adverse employment action also assists Trott in meeting her burden of production on the issue of pretext. *See id.*

[¶24] Third, Trott produced evidence that one month prior to the 2009 deposition, the Hospital evaluated her nursing skills in two areas as being sufficient to merit a raise, but then listed those same areas as grounds for Trott's discharge in its letter to the Board of Nursing. This contradiction could lead a reasonable juror to conclude that the Hospital was attempting to "beef up its charge" against Trott to conceal a true, unlawful reason for the discharge, which assists Trott in meeting her burden of production on the issue of pretext. *See id.*

[¶25] Viewed from the perspective of the full range of reasonable perceptions of the summary judgment record, Trott produced evidence from which a reasonable juror could conclude that the Hospital's articulated reason for discharging her was a pretext to conceal its true, unlawful reason. As such, she established a genuine issue of material fact as to the existence of a "causal link" between her WPA-protected activity and her discharge.

[¶26]  Because Trott met her burden of production on all elements of her claim, the court erred in granting summary judgment, and she is entitled to have her claim determined by a jury.  *See Fuhrmann*, 2012 ME 135, ¶ 21, 58 A.3d 1083; *Doyle*, 2003 ME 61, ¶ 9, 824 A.2d 48.

The entry is:

> Judgment vacated.  Case remanded for further proceedings consistent with this opinion.

---

SILVER, J., with whom JABAR, J., joins, concurring.

[¶27]  I concur in the Court's opinion, and commend the Court for reiterating that determinations of weight or credibility are inappropriate at the summary judgment stage.  As we have recognized, courts must be especially wary in employment discrimination cases, where issues of motive and intent are present and often turn on circumstantial evidence from which reasonable jurors could draw competing, plausible inferences.  *See Daniels v. Narraguagus Bay Health Care Facility*, 2012 ME 80, ¶ 15, 45 A.3d 722; *Cookson v. Brewer Sch. Dep't*, 2009 ME 57, ¶¶ 21-23, 974 A.2d 276.

[¶28]  I write separately to reaffirm my position that we should not apply the three-step, burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to discrimination claims at the summary judgment

stage. *See Daniels*, 2012 ME 80, ¶¶ 29-36, 45 A.3d 722 (Silver, J., concurring). As I wrote in *Daniels*, the *McDonnell* analysis is merely a procedural device that "does nothing more than organize the record to determine whether the plaintiff has offered evidence of causation between the employer's adverse action and the employee's [protected status or activity], and whether the defendant has offered evidence to put that issue into dispute." *Id.* ¶¶ 32, 35. When applied at the summary judgment stage, however, it unnecessarily complicates the courts' already difficult task by breaking down the third element of an employment discrimination claim—causation—into "its own three-prong showing that volleys the burden of production between the two parties." *Id.* ¶¶ 30, 32, 34-35. This rigid and artificial trifurcation of the causation analysis "confuses rather than clarifies the ultimate issue in employment discrimination cases: whether there is evidence of discrimination." *Id.* ¶ 29. Continued application of the *McDonnell* analysis in this context risks clouding the very point the Court so forcefully emphasizes today: that summary judgment in employment discrimination matters is appropriate only if, looking at the record in the light most favorable to the plaintiff and drawing all reasonable inferences in her favor, no reasonable juror could conclude that the plaintiff proved her claim of discrimination. *See Cookson,* 2009 ME 57, ¶¶ 11, 23, 974 A.2d 276.

[¶29] For these reasons, I would not apply the *McDonnell* analysis to motions for summary judgment in discrimination cases. Instead, I would engage in the inquiry our Rules of Civil Procedure demand: whether there is a genuine issue of material fact, and whether the undisputed material facts establish a prima facie cause of action. *See* M.R. Civ. P. 56(c); *Bonin v. Crepeau*, 2005 ME 59, ¶ 8, 873 A.2d 346 ("To survive a defendant's motion for a summary judgment, the plaintiff must establish a prima facie case for each element of her cause of action." (quotation marks omitted)). Applying that more straightforward analysis in this case makes clear that summary judgment is inappropriate, as the record gives rise to competing inferences as to the existence of a causal link between Trott's protected activity and her discharge. Trott need not "convince the court on summary judgment that she *was* subjected to an adverse employment decision because of her protected [activity], or even that her version of events is more plausible." *Fuhrmann v. Staples the Office Superstore E., Inc.*, 2012 ME 135, ¶ 21, 58 A.3d 1083 (quoting *Cookson*, 2009 ME 57, ¶ 23, 974 A.2d 276). Rather, "[s]he need only present sufficient evidence to raise an issue of fact regarding whether her [protected activity] was a substantial, even though perhaps not the only, factor motivating [her] dismissal." *Id.* (third alteration in original) (quotation marks omitted). Stripping away the unnecessary convolutions of the *McDonnell* analysis, Trott has sustained her burden pursuant to Rule 56.

**On the briefs:**

Guy D. Loranger, Esq., Nichols, Webb & Loranger, P.A., Saco, for appellant Claire Trott

Katharine I. Rand, Esq., and Michelle Y. Bush, Esq., Pierce Atwood LLP, Portland, for appellee H.D. Goodall Hospital

**At oral argument:**

Guy D. Loranger, Esq., Law Office of Guy D. Loranger, Old Orchard Beach, for appellant Claire Trott

Katharine I. Rand, Esq., for appellee H.D. Goodall Hospital

York County Superior Court docket number CV-2010-260
FOR CLERK REFERENCE ONLY