STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-14-124

JUDITH NETHERLAND,

Plaintiff

STATE OF MAINE
Cumberland, ss, Clerk's Office

JUN 05 2015

RECEIVED

v.

WESCO DISTRIBUTION,
INC.,

Defendant

ORDER ON DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

Before the court is defendant's motion for summary judgment. In her complaint, plaintiff alleges one count of sexual harassment based on a hostile work environment and one count of retaliation. For the following reasons, the motion is granted in part and denied in part.

## FACTS

The following facts are supported by the summary judgment record and presented in a light most favorable to plaintiff as the non-moving party.[1] Plaintiff began working for defendant WESCO Distribution, Inc. (WESCO) in 2007 as a temporary administrative employee. (Def.'s Supp. S.M.F. ¶ 2.) In June 2008, defendant hired plaintiff directly as an office associate. (Def.'s Supp. S.M.F. ¶ 3.) Plaintiff initially worked as an administrative assistant to Susan Landon, the administrative lead. (Def.'s Supp. S.M.F. ¶ 4.)

WESCO's disciplinary policy includes both a Performance Improvement Plan (PIP) and a Corrective Improvement Plan (CIP). (Def.'s Supp. S.M.F. ¶ 9.) A

---

1 Many of plaintiff's facts are not supported by record citations. Plaintiff frequently cites to Netherland Dep. Ex. 3, her answers to interrogatories, but that deposition exhibit is not in the summary judgment filings. Accordingly, the court cannot rely on these facts for the purposes of the summary judgment motion. Levine v. R.B.K. Caly Corp., 2001 ME 77, ¶ 6, 770 A.2d 653.

PIP is related to an employee's objectives, goals, and work performance and is issued to improve performance. (Def.'s Supp. S.M.F. ¶ 9.) A CIP is for conduct that cannot be repeated. (Def.'s Supp. S.M.F. ¶ 9.)

In May 2010, plaintiff complained to a WESCO Vice President that a vendor was acting "creepy." (Def.'s Supp. S.M.F. 12.) In response, Ms. Landon made physical changes to plaintiff's workspace and communicated with the vendor. (Def.'s Supp. S.M.F. ¶ 13.) The conduct never happened again. (Def.'s Supp. S.M.F. ¶ 14.)

Plaintiff and her co-worker John McAlevey did not get along. Plaintiff testified that Mr. McAlevey claimed he did not like her because she had told Ms. Landon that Mr. McAlevey was smoking at work. (Def.'s Supp. S.M.F. ¶ 18; Pl.'s Opp. S.M.F. ¶ 18.) In 2011, plaintiff complained to Ms. Landon multiple times about Mr. McAlevey's behavior. (Pl.'s Add. S.M.F. ¶¶ 17, 19-20.) Plaintiff complained that Mr. McAlevey was loud and in her face, ignored her when she asked a question, yelled at her, threatened her, and stood uncomfortably close to her. (Pl.'s Add. S.M.F. ¶¶ 3-6, 9, 24; Pl.'s Opp. S.M.F. ¶ 23.) Plaintiff also testified that Mr. McAlevey called her a bitch on multiple occasions and that she complained about it to her supervisors. (Pl.'s Opp. S.M.F. ¶ 26.) Ms. Landon admitted that plaintiff complained multiple times about Mr. McAlevey's behavior. (Def.'s Supp. S.M.F. ¶ 27; Pl.'s Opp. S.M.F. ¶ 27.)

In early February 2012, a meeting was held to discuss plaintiff's concerns with Mr. McAlevey. (Def.'s Supp. S.M.F. ¶ 19; Pl.'s Opp. S.M.F. ¶ 19.) Plaintiff, Mr. McAlevey, Ms. Landon, and Paul Perry, another supervisor,[2] were present at

2 Paul Perry's position at Wesco is not clear from the summary judgment record.

2

the meeting. (Def.'s Supp. S.M.F. ¶ 19.) During the meeting, Mr. McAlevey acted unprofessionally and inappropriately. (Def.'s Supp. S.M.F. ¶ 20; Pl.'s Opp. S.M.F. ¶ 20.) Mr. McAlevey yelled at plaintiff, called her a bitch, made her cry, and then made fun of her for crying. (Def.'s Supp. S.M.F. ¶ 21; Pl.'s Add. S.M.F. ¶¶ 7-8.) Mr. McAlevey told plaintiff that he is an angry person and that she would just have to live with it. (Pl.'s Add. S.M.F. ¶ 12.) He also referred to plaintiff as someone who thinks her "shit doesn't stink." (Pl.'s Add. S.M.F. ¶ 12; Def.'s Reply S.M.F. ¶ 12.) Plaintiff told Mr. McAlevey that she was afraid of him and that he was unprofessional. (Pl.'s Add. S.M.F. ¶ 13.) Plaintiff eventually left the meeting while Ms. Landon, Mr. Perry, and Mr. McAlevey remained. (Pl.'s Add. S.M.F. ¶ 14.)

At the meeting, Mr. Perry reprimanded Mr. McAlevey for making fun of plaintiff. (Def.'s Supp. S.M.F. ¶ 28; Pl.'s Opp. S.M.F. ¶ 28.) After the meeting, Mr. McAlevey was issued a CIP on February 17, 2012, but that CIP did not refer to any misconduct towards plaintiff. (Pl.'s Add. S.M.F. ¶ 32; Def.'s Supp. S.M.F. ¶ 34; Pl.'s Opp. S.M.F. ¶ 34.) In early February 2012, after the meeting, plaintiff called John Oliverio, HR Director for WESCO, about Mr. McAlevey's behavior at the meeting. (Pl.'s Add. S.M.F. ¶ 28; Def.'s Reply S.M.F. ¶ 28; Def.'s Supp. S.M.F. ¶ 30.) According to Mr. Oliverio, he decided not to connect Mr. McAlevey's discipline to plaintiff's complaints because it would only foster his resentment for plaintiff. (Def.'s Supp. S.M.F. ¶¶ 33-34.) Mr. Oliverio told plaintiff to continue to come forward if she had any future concerns about Mr. McAlevey. (Def.'s Supp. S.M.F. ¶ 35.)

Plaintiff testified that her supervisors failed to correct Mr. McAlevey's behavior and that it became worse after the February meeting. (Pl.'s Opp. S.M.F.

3

¶ 24; Pl.'s Add. S.M.F. ¶ 16.) For example, Mr. McAlevey ignored plaintiff when she asked him a question about a customer. (Pl.'s Add. S.M.F. ¶ 3.) Plaintiff continued to complain about Mr. McAlevey until he left WESCO. (Pl.'s Add. S.M.F. ¶ 23.) Mr. McAlevey eventually resigned from WESCO in August 2012. (Def.'s Supp. S.M.F. ¶ 37.)

Plaintiff testified that she noticed a change in Ms. Landon's attitude after the meeting. (Def.'s Supp. S.M.F. ¶¶ 39-41, 43-45; Pl.'s Opp. S.M.F. ¶¶ 39-41, 43-45.) Plaintiff was upset that Ms. Landon assigned her menial tasks to perform. (Def.'s Supp. S.M.F. ¶¶ 46-47; Pl.'s Opp. S.M.F. ¶¶ 46-47.) Plaintiff felt that Ms. Landon made personal attacks by giving her lower grades on work evaluations. (Def.'s Supp. S.M.F. ¶ 53.) After Mr. McAlevey resigned, Mr. Perry held weekly meetings to try to improve plaintiff's relationship with Ms. Landon. (Def.'s Supp. S.M.F. ¶ 58.)

Plaintiff testified that before 2012 she received only positive performance reviews. (Pl.'s Opp. S.M.F. ¶ 10.) Ms. Landon testified that she talked with plaintiff about performance issues from the time she started working. (Def.'s Supp. S.M.F. ¶ 10.)

In June 2012, a new position was created for plaintiff, which included a greater marketing role.[3] (Def.'s Supp. S.M.F. ¶¶ 60, 62.) Eventually, plaintiff spoke with Ms. Landon about feeling overwhelmed by her marketing duties. (Def.'s Supp. S.M.F. ¶ 64.) In October 2012, Ms. Landon sent plaintiff an email outlining a plan for improvement for plaintiff. (Def.'s Supp. S.M.F. ¶ 67.)

---

3 Plaintiff's denial of this fact is not supported by the record citation. In one of plaintiff's material facts, she appears to refer to the June 2012 job change as a promotion. (Pl.'s Opp. S.M.F. ¶ 75.) In another fact, she calls it a demotion. (Pl.'s Opp. S.M.F. ¶ 60.)

4

In November 2012, plaintiff complained about a temporary employee at WESCO because he referred to an inappropriate song title in her presence and it made her feel uncomfortable. (Def.'s Supp. S.M.F. ¶ 68.) She also complained that the employee came to her desk and made her feel uncomfortable. (Pl.'s Opp. S.M.F. ¶¶ 68-70.) After her complaint, the employee did not bother her again.[4] (Def.'s Supp. S.M.F. ¶¶ 69-70.)

In late 2012, Ms. Landon informed Mr. Oliverio that she had some concerns with plaintiff's performance. (Def.'s Supp. S.M.F. ¶ 72.) In January 2013, plaintiff was assigned more of an administrative role at WESCO. (Def.'s Supp. S.M.F. ¶ 73.) Plaintiff was upset that she was being reassigned and felt that she should be a project manager. (Def.'s Supp. S.M.F. ¶¶ 74-75; Pl.'s Opp. S.M.F. ¶ 75.) On January 26, 2013, plaintiff received a CIP that noted plaintiff's "inappropriate and unprofessional emails," "does not listen to supervisor feedback," "oversteps her authority," and "tries to rally others to her position." (Def.'s Supp. S.M.F. ¶ 76; Pl.'s Opp. S.M.F. ¶ 76.) Plaintiff disagreed with the allegations in the CIP. (Pl.'s Opp. S.M.F. ¶ 76.)

From January to March 2013, plaintiff transitioned out of project management work. (Def.'s Supp. S.M.F. ¶ 77.) Plaintiff continued to receive the same hours, pay, and other benefits after the change in her duties. (Def.'s Supp. S.M.F. ¶ 78.) Plaintiff testified that she understood WESCO's marketing needs were minimal by March 2013. (Def.'s Supp. S.M.F. ¶ 79.) Nevertheless, plaintiff

---

4 Plaintiff's denials of these facts are not supported by the record citations. (Netherland Dep. 94:19-95:3.) Plaintiff testified at least twice in her deposition that the employee's conduct stopped after her complaint. (Netherland Dep. 95:9-12, 146:6-8.)

5

did not like the administrative work and made that fact clear to Ms. Landon. (Def.'s Supp. S.M.F. ¶ 81; Pl.'s Opp. S.M.F. ¶ 73.)

In May 2013, plaintiff called the Corporate HR hotline to say that she was "afraid to come to work." (Def.'s Supp. S.M.F. ¶ 84.) Mr. Oliverio called plaintiff in response to plaintiff's call to the hotline. (Def.'s Supp. S.M.F. ¶ 85.) Plaintiff was not afraid for her physical safety but afraid that Ms. Landon was going to fire her. (Def.'s Supp. S.M.F. ¶¶ 88-89; Pl.'s Opp. S.M.F. ¶¶ 88-89.) Plaintiff believes that Ms. Landon was retaliating against her and that Mr. Oliverio took Ms. Landon's side. (Pl.'s Opp. S.M.F. ¶¶ 88-89.) Mr. Oliverio concluded that plaintiff's complaint was a personal issue and that there was no safety issue or harassment. (Def.'s Supp. S.M.F. ¶ 95.)

In June 2013, Ms. Landon spoke with plaintiff about her performance issues. (Def.'s Supp. S.M.F. ¶ 99.) In July 2013, Mr. Oliverio spoke with plaintiff about his review of plaintiff's complaint. (Def.'s Supp. S.M.F. ¶ 100.) On July 15, 2013, plaintiff did not receive a merit increase because of her previous PIPs and CIPs. (Def.'s Supp. S.M.F. ¶ 101; Pl.'s Add. S.M.F. ¶ 29.) On July 22, 2013, Ms. Landon and Scott Kelly, another WESCO manager,[5] met with plaintiff and discussed one of plaintiff's CIPs. (Def.'s Supp. S.M.F. ¶ 102.)

On July 24, 2013, plaintiff filed her complaint with the Maine Human Rights Commission. (Def.'s Supp. S.M.F. ¶ 104.) On February 5, 2014, plaintiff was taken off her PIP because her performance had improved. (Def.'s Supp. S.M.F. ¶ 105.) As a result, plaintiff received a pay raise in March 2014. (Def.'s Supp. S.M.F. ¶ 106.) Despite plaintiff's raise, several months later she resigned

---

5 Scott Kelly's position at Wesco is not clear from the summary judgment record.

6

her job immediately and without notice on August 27, 2014. (Def.'s Supp. S.M.F. ¶ 107.)

## DISCUSSION

### 1. Standard of Review

"Summary judgment is appropriate if the record reflects that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Dussault v. RRE Coach Lantern Holdings, LLC, 2014 ME 8, ¶ 12, 86 A.3d 52 (quoting F.R. Carroll, Inc. v. TD Bank, N.A., 2010 ME 115, ¶ 8, 8 A.3d 646). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." McIlroy v. Gibson's Apple Orchard, 2012 ME 59, ¶ 7, 43 A.3d 948 (quoting N. E. Ins. Co. v. Young, 2011 ME 89, ¶ 17, 26 A.3d 794). "Even when one party's version of the facts appears more credible and persuasive to the court, any genuine factual dispute must be resolved through fact-finding, regardless of the nonmoving party's likelihood of success." Lewis v. Concord Gen. Mut. Ins. Co., 2014 ME 34, ¶ 10, 87 A.3d 732. If facts are undisputed but nevertheless capable of supporting conflicting, plausible inferences, "the choice between those inferences is not for the court on summary judgment." Id.

### 2. Hostile Work Environment

To succeed on a hostile work environment claim, plaintiff must demonstrate six elements:

> (1) that she (or he) is a member of a protected class; (2) that she was subject to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually

7

objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

Watt v. UniFirst Corp., 2009 ME 47, ¶ 22, 969 A.2d 897. Defendant challenges whether plaintiff can present prima facie evidence of the third, fourth, fifth, and sixth elements of her claim. The court will analyze the evidence in the statements of material fact to determine whether plaintiff has met her burden of presenting a prima facie claim for a hostile work environment.

### a. "Because of Sex" (Third Element)

Plaintiff argues that her hostile work environment claim is based on Mr. McAlevey's behavior towards her over the course of two years.[6] The critical inquiry in sex discrimination cases "is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Berry v. City of S. Portland, 525 F. Supp. 2d 214, 231 (D. Me. 2007).[7] "[T]he use of sexually degrading, gender-specific epithets, such as 'slut,' 'cunt,' 'whore,' and 'bitch,' . . . has been consistently held to constitute harassment based upon sex." Forrest v. Brinker Int'l Payroll Co., 511 F.3d 225, 229 (1st Cir. 2007); see also Burns v. McGregor Elec. Indus., 989 F.2d 959, 966 (8th Cir. 1993) (finding that, under circumstances of the case "for a co-employee to refer to a woman employee as a 'bitch' or 'cunt' in the work place is

---

6 The isolated incidents involving the vendor and the temporary employee are insufficient to support a hostile work environment claim. Berry v. City of S. Portland, 525 F. Supp. 2d 214, 232 (D. Me. 2007) ("It is clear that isolated incidents (unless extremely serious) and offhand comments are not sufficient to establish a hostile work environment."). Further, plaintiff does not base her claims of hostile work environment on any conduct by Ms. Landon.

7 "Because the MHRA generally tracks federal anti-discrimination statutes, it is appropriate to look to federal precedent for guidance in interpreting the MHRA." Doyle v. Dep't of Human Servs., 2003 ME 61, ¶ 14 n.7, 824 A.2d 48.

8

indefensible"). Discrimination can exist even if the harasser's actions were not motivated by plaintiff's gender. Winsor v. Hinckley Dodge, 79 F.3d 996, 1001 (10th Cir. 1996) ("The fact that plaintiff's abuse was motivated by gender neutral reasons is irrelevant.").

Although the alleged harassment in this case is not as severe as many of the cases cited by plaintiff, plaintiff has raised an issue of material fact regarding whether the harassment was based on plaintiff's gender. Plaintiff testified that Mr. McAlevey called her a bitch on multiple occasions, yelled at her, tried to intimidate her, would stand uncomfortably close to her, and threaten her. Plaintiff has raised a genuine issue of material fact regarding whether Mr. McAlevey's actions toward plaintiff were based on her sex.

b. Harassment was Sufficiently Severe or Pervasive (Fourth Element)

To demonstrate the fourth element of a hostile work environment claim, "an employee must show repeated or intense harassment sufficiently severe or pervasive to create an abusive working environment." Blake v. State, 2005 ME 32, ¶ 8, 868 A.2d 234 (internal quotation marks omitted). The court must analyze the totality of the circumstances, "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (internal quotation marks omitted). This determination "is left to the trier of fact." Watt, 2009 ME 47, ¶ 23, 969 A.2d 897.

According to plaintiff's testimony, Mr. McAlevey called her a bitch on multiple occasions, yelled at plaintiff and tried to intimidate her by getting in her face, and ignored plaintiff, which affected customer service. Mr. McAlevey also threatened plaintiff by saying things like "you better watch out." According to

9

plaintiff, this conduct continued for two years. Plaintiff has generated a genuine issue of material fact regarding repeated or intense harassment that created an abusive working environment.

c. Conduct Objectively and Subjectively Objectionable (Fifth Element)

The fifth element requires a plaintiff to show "that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so." Watt, 2009 ME 47, ¶ 22, 969 A.2d 897. In analyzing this element, the court must "distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment." Noviello v. City of Boston, 398 F.3d 76, 92 (1st Cir. 2005).

As discussed above, plaintiff has raised a genuine issue of material fact regarding whether Mr. McAlevey's conduct towards plaintiff was objectively offensive and whether a reasonable person would find it abusive. She has alos raised a genuine issue of material fact regarding whether could plaintiff herself found the conduct to be abusive. She repeatedly complained about Mr. McAlevey's behavior to Ms. Landon and reported the harassment to human resources. She also told Mr. McAlevey that she was afraid of him and she left the February 2012 meeting in tears.

d. Basis for Employer Liability (Sixth Element)

Finally, defendant challenges whether plaintiff has produced evidence to establish a basis for WESCO's liability for Mr. McAlevey's conduct. "A plaintiff must satisfy different standards for establishing employer liability in a hostile work environment case depending on whether the harasser is a supervisor or co-employee of the victim." Forrest, 511 F.3d at 230. Under First Circuit precedent,

10

in a co-employee harassment case, "a plaintiff must demonstrate that the employer knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate action." Id. (internal quotation marks omitted). What constitutes "immediate and appropriate corrective action" involves a "case-specific, fact-intensive analysis" for the fact finder to complete. Watt, 2009 ME 47, ¶ 28, 969 A.2d 897.

There is no dispute that plaintiff frequently complained to Ms. Landon about Mr. McAlevey's harassment. Ms. Landon admitted that plaintiff complained about Mr. McAlevey's yelling at her and trying to intimidate her. Plaintiff testified that she complained multiple times, beginning in 2010, that Mr. McAlevey called her a bitch or other names. Ms. Landon also testified that she was present at the February 2012 meeting and heard Mr. McAlevey call plaintiff a bitch and make fun of her for crying. Mr. McAlevey's behavior did not improve after the February meeting and his treatment of plaintiff became worse. Mr. McAlevey's supervisors disciplined him, but did not in any way link that discipline to his inappropriate conduct towards plaintiff. Based on these facts, plaintiff has raised a genuine issue of material fact regarding whether WESCO failed to take immediate and appropriate corrective action in response to plaintiff's complaints.

### e. Retaliation

Under the Maine Human Rights Act (MHRA), it is unlawful for an employer "to discriminate in any manner against individuals because they have opposed a practice that would be a violation of [the MHRA]." 5 M.R.S. § 4572(1)(E) (2014). Sexual harassment is unlawful under the MHRA. 5 M.R.S. § 4572(1)(A). In deciding a motion for summary judgment on a retaliation claim,

11

the court must apply a three-part, burden-shifting analysis: at step one, the employee must "produce evidence that unlawful discrimination motivated the employer's adverse employment action against the employee"; at step two, the burden shifts to the employer "to produce evidence of a legitimate, lawful reason for the adverse employment action"; and, at step three, the employee must "produce evidence that the employer's proffered reason is a pretext to conceal an unlawful reason for the adverse employment action." Trott v. H.D. Goodall Hosp., 2013 ME 33, ¶ 15, 66 A.3d 7; Doyle v. Dep't of Human Servs., 2003 ME 61, ¶ 20, 824 A.2d 48.

To demonstrate a prima facie retaliation claim, a plaintiff must demonstrate: (1) she engaged in a statutorily protected activity, (2) the employer made an employment decision that adversely affected her, and (3) a causal link between the protected activity and the adverse employment action. Daniels v. Narraguagus Bay Health Care Facility, 2012 ME 80, ¶ 21, 45 A.3d 722.

a. Adverse Employment Action

Defendant assumes for the purposes of the motion for summary judgment that plaintiff engaged in a statutorily protected activity. (Def.'s Mem. 15.) Plaintiff specifies the protected activity as plaintiff's contacting the corporate human resources director in February 2012. (Pl.'s Opp. Mem. 14-15.)

Defendant first challenges whether plaintiff has shown that she suffered an adverse employment action. "Actions adverse to employment are recognized as those that adversely affect the employee's compensation, terms or other conditions of employment." LePage v. Bath Iron Works Corp., 2006 ME 130, ¶ 20, 909 A.2d 629 (internal quotation marks omitted). "A mere reshuffling of responsibilities, on its own, is insufficient to establish an adverse employment

12

action." Berry, 525 F. Supp. 2d at 229. A disciplinary letter can constitute an adverse employment action. Valentin-Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 97 (1st Cir. 2006).

Plaintiff argues that the adverse employment actions include "Landon being rude to Netherland, giving her poor evaluations, demoting Netherland, threatening her with termination and preventing her from receiving a merit raise." (Pl.'s Opp. Mem. at 14.) Plaintiff argues also that Ms. Landon ostracized plaintiff and issued baseless write-ups to plaitiff. Id. There is no evidence in the summary judgment record that Ms. Landon's rudeness or ostracism could reasonably be interpreted as an adverse employment action. It appears that plaintiff, rightly or wrongly, thought Ms. Landon had a negative attitude, joked with plaintiff differently than with other employees, and chatted with plaintiff less often. Other employees appear to have taken plaintiff's side. (Pl.'s Opp. S.M.F. ¶ 54.) This type of behavior does not constitute an adverse employment action. There is also no evidence in the summary judgment record that Ms. Landon threatened plaintiff with termination.

With regard to plaintiff's claims of poor evaluations, plaintiff does not identify specifically which performance evaluations she claims were made in retaliation. The summary judgment record shows that plaintiff was issued a CIP on January 22, 2013 and a PIP on May 1, 2013. Plaintiff disagrees with these performance evaluations. (Pl.'s Opp. S.M.F. ¶¶ 76, 82.)

13

Although plaintiff claims she was demoted, the new position that plaintiff moved into in June 2012 was not a demotion.[8] Plaintiff does claim that her project management role was terminated in January 2013 and she was assigned more of an administrative role because Ms. Landon knew she did not like administrative work. (Pl.'s Opp. S.M.F. ¶ 73.) This change to plaintiff's job duties in January 2013, however, does not constitute an adverse employment action. See Berry, 525 F. Supp. 2d at 229. Plaintiff admitted that WESCO's marketing needs had changed in 2013. Her new role in 2013 did not involve any change in pay, hours, benefits, or reporting structure.

The court will assume that the negative performance reviews and failure to receive a merit pay increase constitute adverse employment actions.

b. Causal Link

The final element of a plaintiff's prima facie case of retaliation is demonstrating a causal link between the protected activity and the adverse employment action. Daniels, 2012 ME 80, ¶ 21, 45 A.3d 722. "Temporal proximity of an employer's awareness of protected activity and the alleged retaliatory action may serve as the causal link for purposes of a prima facie case." Id.

Plaintiff has failed to present evidence of a causal link between the protected activity and an adverse employment action. Although plaintiff claims that she had been complaining about Mr. McAlevey's behavior since 2010, it was more than eleven months after the call to human resources before she can clearly identify an adverse employment action. The summary judgment record demonstrates that a new position was created for plaintiff in June 2012 based on

8 Plaintiff's fact stating that the move was a demotion is not supported by a proper record citation. (Pl.'s Opp. S.M.F. ¶ 60.)

14

her requests. There is no dispute that plaintiff found some of the marketing tasks of her new role to be overwhelming. It was not until January 2013, more than eleven months after the February 2012 meeting with Mr. McAlevey and plaintiff's call to the human resources director and six months after Mr. McAlevey resigned, that she received a written negative performance evaluation. It was not until July 2013 that plaintiff was denied a merit pay raise after the negative reviews. The denial was linked to the negative reviews. Because there is no evidence linking the protected activity to the negative performance reviews, there is likewise no evidence linking the protected activity to the denial of a pay increase. This time period is too long to support an inference of causation. Ahern v. Shinseki, 629 F.3d 49, 58 (1st Cir. 2010) ("[A] gap of several months cannot alone ground an inference of a causal connection between a complaint and an allegedly retaliatory action.").

There is no other evidence of causation in the record.[9] The undisputed facts show that a new position was created for plaintiff at her request after the February 2012 meeting and her call to human resources and that she struggled with her new marketing tasks. These intervening events occurred before any adverse action was taken against plaintiff. Plaintiff has failed to raise a genuine issue of material fact regarding a causal link between plaintiff's protected activity and an adverse employment action.

The entry is

> Defendant's Motion for Summary Judgment on Count
> I of Plaintiff's Complaint is DENIED.

---

9 The majority of plaintiff's allegations regarding defendant's actions are not supported by the record. (Pl.'s Add. S.M.F. ¶¶ 1-2, 18, 35-38, 40-64.)

Defendant's Motion for Summary Judgment on Count II of Plaintiff's Complaint is GRANTED. Judgment is GRANTED in favor of Defendant, WESCO Distribution, Inc., and against Plaintiff, Judith Netherland, on Count II of Plaintiff's Complaint.

Date: June 5, 2015

Nancy Mills
Justice, Superior Court

CUMBERLAND COUNTY SUPERIOR COURT
PO BOX 412
PORTLAND ME 04112


GUY LORANGER ESQ
ONE GRANNY SMITH COURT
SUITE 3
OLD ORCHARD BEACH ME 04064


CUMBERLAND COUNTY SUPERIOR COURT
PO BOX 412
PORTLAND ME 04112


GREGG FRAME ESQ
TAYLOR MCCORMACK & FRAME
30 MILK ST
5TH FLOOR
PORTLAND ME 04101