# United States Court of Appeals

## For the First Circuit

No. 20-1688

NADINE E. LIMA,

Plaintiff, Appellant,

v.

CITY OF EAST PROVIDENCE, by and through its Finance Director,
Malcolm Moore, CITY OF EAST PROVIDENCE SCHOOL DEPARTMENT, by and
through its Superintendent, individually and in her official
capacity, KATHRYN CROWLEY,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary S. McElroy, U.S. District Judge]

Before

Kayatta, Barron, Circuit Judges,
And O'Toole,* District Judge.

Sonja L. Deyoe for appellant.
Kathleen M. Daniels, with whom Marc DeSisto was on brief, for
appellees.

---

*Of the District of Massachusetts, sitting by designation.

November 3, 2021

O'TOOLE, **District Judge**. Dr. Nadine E. Lima, a school principal formerly employed by the City of East Providence, Rhode Island, sued the City, its School Department, and the School Superintendent, Kathryn Crowley, asserting claims under various legal theories arising from what she alleged were unlawful discriminatory employment actions taken against her. After discovery was taken, the defendants moved for summary judgment in their favor on all counts.[1] The assigned district judge referred the motion to a magistrate judge for a report and recommendation pursuant to Federal Rule of Civil Procedure 72(b). After a hearing, the magistrate judge filed a report that recommended the entry of summary judgment in favor of the defendants. In due course the district judge concurred entirely with the analysis of the report and ordered that one count, for breach of contract, be dismissed for failure to state a plausible claim, and granted summary judgment for the defendants on all remaining counts. The plaintiff appealed so much of the judgment as addressed two of the counts: unlawful racial discrimination under 42 U.S.C. § 1981 (Count II of the complaint) and discriminatory retaliation under Rhode Island

---

[1] The parties stipulated to the dismissal of one claim that alleged disparate impact discrimination.

General Laws § 42-112-2, which is a state cognate provision to § 1981 (Count VI). We affirm the judgment of the district court.

## I.  STANDARD OF REVIEW

"We review a district court's grant of summary judgment de novo." Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015). "Summary judgment is appropriate where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Audette v. Town of Plymouth, 858 F.3d 13, 19 (1st Cir. 2017) (quoting Mulloy v. Acushnet Co., 460 F.3d 141, 145 (1st Cir. 2006)). Although the record is construed in a light most favorable to the non-moving party, the Court need not consider "conclusory allegations, improbable inferences, [or] unsupported speculation." Mulloy, 460 F.3d at 145 (quoting Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002)).

## II.  BACKGROUND

Lima, an African-American woman, was employed by the East Providence School Department as an elementary school principal beginning in 2000. In 2013, she applied for three different positions within the School Department, including

Superintendent, but she was not hired for any of them. A white woman, Kimberly Mercer, was chosen to be Superintendent.

Believing that the Department was reneging on a prior commitment made directly to her that it would pursue affirmative action hiring practices, in November 2014 Lima sued the School Department and Mercer as Superintendent, claiming, among other things, retaliation for her advocacy for better affirmative action practices. A year later, the case was settled, and a written settlement agreement was entered. Its provisions included the Department's undertaking to create and fund an affirmative action position within the Department and its promise that there would be no retaliation against Lima for having sued. Lima executed a release of "any current claims of retaliation." The settlement agreement was executed in mid-November 2015 and the existing complaint was dismissed with prejudice in December. See Stipulation of Dismissal, Lima v. City of East Providence, No. 1:14-00513 (D.R.I. Nov. 5, 2015), ECF No. 12.

Also in December 2015, there were changes in the leadership in the School Department. Superintendent Mercer resigned and was succeeded in that position by Kathryn Crowley. Two new Assistant Superintendents were also hired. Sandra Forand was hired to that position in November 2015, and Celeste Bowler

was hired in January 2016. None of the three had been involved in the prior suit by Lima or its settlement.

Lima's relationship with Crowley began cordially. Crowley asked her to serve on the Department's hiring committee, solicited her input as to who might serve as her assistant principal, and offered to refer a graduate student to her for mentoring.

The era of good feelings did not last long. Lima was offended when, in early January, Crowley wondered to her whether the person serving as affirmative action officer for the City of East Providence generally might not also handle affirmative action responsibilities for the School Department. Lima apparently thought Crowley's statement to be backsliding on the Department's undertaking in the 2015 settlement agreement to hire what she understood to be a full-time affirmative action officer. In any event, Bowler, an African-American woman like Lima, was chosen by Crowley to serve as the Department's affirmative action officer. She had held a similar position for several years in her prior employment in another school district.

In the present action, Lima's overarching complaint is that she had effectively been subjected to a hostile work environment because of her advocacy for the School District undertaking a strong affirmative action effort. She sets forth a

series of incidents that she alleges taken together support that claim.

Lima requested permission to purchase a room divider and rug for her classroom. Crowley rejected the request for the room divider as a matter of educational policy. She invited Lima to make a convincing case for the rug, but Lima did not follow up on the request.

On another occasion Lima complained that her school was burdened with a higher percentage of pupils with special needs than other principals had and consequently her workload was greater than those of other principals. She requested from Crowley appointment of a dean to help out. Crowley met the request by assigning the person suggested by Lima to assist students with special needs at Lima's school.

Lima expressed dissatisfaction with the performance of a substitute teacher in her school, and the substitute was eventually transferred to another school. Lima thought she should have been included in the process by which the teacher was dismissed.

Lima complained that her performance reviews were held too close in time to each other and thus interfered with her ability to respond to any criticism with improved performance, but that compressed schedule, dictated as a practical matter by the

major changes in top administration personnel halfway through the school year, applied to all principals, not just to her.

Lima also alleges that the defendants unlawfully retaliated against her because of her affirmative action advocacy. In 2016, the Rhode Island Department of Education was encouraging school departments to develop pre-kindergarten ("pre-K") programs, and it offered grant support for departments that took up the challenge. Bowler applied for such a grant on behalf of the East Providence School Department. The application included the fact that one of the Department's principals, Lima, was already certified to be a pre-K principal, as well as an experienced elementary school principal. The grant was awarded.

Crowley and Bowler asked Lima if she would agree to be transferred from her existing assignment to serve as the first principal for the new pre-K program at the same salary she earned in her present position. She declined, seeing the offer as a demotion because the pre-K program would have had significantly fewer pupils enrolled than her existing elementary school assignment. However, under Lima's written employment contract with the Department, the Superintendent was given the express power to make involuntary assignments to new positions under the same conditions as were applicable to an employee's existing

employment, including salary. Crowley exercised that power and assigned Lima to the new pre-K program.

### III. DISCUSSION

Claims invoked under federal 42 U.S.C. § 1981 and the Rhode Island Civil Rights Act, R.I. Gen. Laws § 42-112-1, are analyzed using standards applicable to suits brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* See Pina v. Children's Place, 740 F.3d 785, 800 (1st Cir. 2014) (citing Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008)); Rathbun v. Autozone, Inc., 361 F.3d 62, 71 (1st Cir. 2004) (assuming that framework applies under the Rhode Island Civil Rights Act).

Accordingly, the familiar McDonnell Douglas burden-shifting framework is appropriate to analyze the viability of Lima's claims. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The "plaintiff bears the initial burden of proffering evidence sufficient to establish a prima facie case of discrimination." Cherkaoui v. City of Quincy, 877 F.3d 14, 24 (1st Cir. 2017). If that is successfully done, the burden shifts to the defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Id. If the defendants successfully proffer a plausible nondiscriminatory reason for the action taken, the plaintiff then must show that the proffered reason was pretextual and the true reason for the adverse employment action was instead unlawful discrimination. See id.

- 9 -

(quoting Garmon v. Nat'l R.R. Passenger Corp., 844 F.3d 307, 313 (1st Cir. 2016)).

In demonstrating that the defendant's proffered reason for the adverse action was pretextual, "[i]t is not enough for a plaintiff merely to impugn the veracity of the employer's justification; [she] must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive . . . .'" Meléndez v. Autogermana, Inc., 622 F.3d 46, 52 (1st Cir. 2010) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991)).

A.      **Hostile Work Environment**

"To establish a claim of 'hostile work environment . . .' a plaintiff must demonstrate 'that the harassment was sufficiently severe or pervasive so as to alter the conditions of the plaintiff's employment and create an abusive work environment.'" Lockridge v. Univ. of Me. Sys., 597 F.3d 464, 473 (1st Cir. 2010) (quoting Forrest v. Brinker Int'l Payroll Co., LP, 511 F.3d 225, 228 (1st Cir. 2007)).

The disparate grievances identified above that Lima relies on self-evidently fall far short of meeting that criterion. With respect to most of them, the defendants largely did what she wanted them to do. She wanted a Department employee to be assigned the affirmative action portfolio and not a person already employed

- 10 -

by the City in a similar capacity. Bowler was given the assignment. Although Crowley rejected one of her requests for equipping a classroom, Crowley asked her to make a case for the proposed rug purchase, but she never did. After she complained about the performance of a substitute teacher, the teacher was let go. When she asked for personnel assistance to help with her workload, she received it in the person she had asked for. The compressed schedule of her three annual evaluations was not unique to her but applicable to all the other elementary school principals in the Department. Taken individually or cumulatively, these events could not be found by a rational jury to have created a hostile workplace for Lima. As to these matters, she failed to plead even a prima facie case of discrimination.

Lima was ultimately given an assignment she did not seek or want, and it can be assumed in her favor that her transfer to the pre-K assignment would be sufficiently "hostile" to get her past the first step of the McDonnell-Douglas formula.[2] At the second step, the defendants have articulated two non-discriminatory reasons for the transfer: Lima had extensive

---

[2] The exercise of a legitimate existing contract right does not by itself necessarily refute a claim of unlawful employment discrimination.

experience as a school principal and was already credentialed for the pre-K work. Lima does not contest those two facts.

Because the defendants have articulated two nondiscriminatory reasons for the transfer, the burden shifts back to Lima to show that those reasons were not the real reasons for the transfer and the real reason was discriminatory. She lacks evidence that could meet that criterion. The two proffered reasons were objectively true. She had considerable work experience as an elementary school principal, and she was officially credentialed for the pre-K work. They were also reasons that tightly fit the transfer assignment: the Department was looking for a person with pre-K credentials to head the new program. Lima has offered no evidence to permit a rational factfinder to believe those reasons were pretextual.[3]

B.      **Retaliation**

To prove a claim of wrongful retaliation, Lima must show that (1) she had engaged in protected conduct (such as complaining of unlawful discrimination); (2) she suffered an adverse employment action (such as a material alteration of her conditions

---

[3] As a separate matter, while "a single act of harassment may, if egregious enough, suffice to evince a hostile work environment," it is doubtful that the single act of job reassignment is sufficiently egregious to support a hostile work environment claim. See Noviello v. City of Boston, 398 F.3d 78, 84 (1st Cir. 2005).

of employment); and (3) there was a causal connection between the protected conduct and the adverse employment action. See Tang v. Citizens Bank, N.A., 821 F.3d 206, 218-19 (1st Cir. 2016) (citing Noviello, 398 F.3d at 88).

Employer actions that could amount to unlawful retaliation are those that are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006). This is an objective standard. Id. at 68. An employee's subjective reaction to the claimed act of retaliation is not determinative. Id. at 68-69.

Like the district court, we assume arguendo that Lima has sufficiently alleged a prima facie case of retaliation based on her involuntary transfer to the pre-K program. The next step in the McDonnell Douglas framework requires the defendants to "articulat[e] a legitimate, nondiscriminatory reason for the adverse employment decision[s]." Cherkaoui, 877 F.3d at 26 (alteration in original) (quoting Mesnick, 950 F.2d at 823).

As set forth above, the defendants have proffered two related legitimate, nondiscriminatory reasons for the transfer. The establishment of a pre-K program in the East Providence schools was a step forward for the School Department, one urged by the state Department of Education. Lima had the necessary pre-K qualification credentials and the experience as a principal,

- 13 -

apparently the only elementary principal in the East Providence schools to have both. That she was appropriately credentialed was cited in the School Department's application for the state grant, and it may well have been an influential factor in the grant award.

Lima has failed to offer admissible evidence to permit a jury to conclude that the articulated reasons were pretextual and that the transfer was actually retaliatory. Other than her own suspicions, she proffers no admissible evidence to impeach the veracity of the School Department's very plausible explanation for the transfer. Her claim of retaliatory employment discrimination is not supported by admissible evidence that would warrant putting the case to a jury. The defendants' motion for summary judgment was properly granted.

## IV.  CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment.